**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHRISTOPHER J. HAWES, d/b/a CJH
Color and Design Group,
                    *Plaintiff-Appellant,*

            v.                                          No. 02-1182

NETWORK SOLUTIONS, INCORPORATED;
L'OREAL, a Societe Anonyme,
                    *Defendants-Appellees.*

CHRISTOPHER J. HAWES, d/b/a CJH
Color and Design Group,
                    *Plaintiff-Appellant,*

            v.                                          No. 02-1377

NETWORK SOLUTIONS, INCORPORATED;
L'OREAL, a Societe Anonyme,
                    *Defendants-Appellees.*

CHRISTOPHER J. HAWES, d/b/a CJH
Color and Design Group,
                    *Plaintiff-Appellant,*

            v.                                          No. 02-1824

NETWORK SOLUTIONS, INCORPORATED;
L'OREAL, a Societe Anonyme,
                    *Defendants-Appellees.*

CHRISTOPHER J. HAWES, d/b/a CJH
Color and Design Group,
                    *Plaintiff-Appellant,*

              v.                              No. 02-1825

NETWORK SOLUTIONS, INCORPORATED;
L'OREAL, a Societe Anonyme,
                    *Defendants-Appellees.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge; Gerald Bruce Lee,
District Judge; Thomas Rawles Jones, Jr., Magistrate Judge.
(CA-01-582-A)

Argued: January 21, 2003

Decided: July 9, 2003

Before WIDENER, WILKINSON, and NIEMEYER,
Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Widener and Judge Wilkinson joined.

**COUNSEL**

**ARGUED:** Thomas J. Frain, Bolton, Massachusetts, for Appellant. Robert L. Sherman, PAUL, HASTINGS, JANOFSKY & WALKER, New York, New York; Brian Albert Davis, NETWORK SOLUTIONS, INC., Dulles, Virginia, for Appellees. **ON BRIEF:** Peter Paul Mitrano, Boston, Massachusetts, for Appellant. Philip L. Sbarbaro, NETWORK SOLUTIONS, INC., Dulles, Virginia; Timothy B.

Hyland, LEFFLER & HYLAND, P.C., Fairfax, Virginia, for Appellees.

## OPINION

NIEMEYER, Circuit Judge:

Christopher J. Hawes, doing business as CJH Color and Design Group ("Hawes"), commenced this action against Network Solutions, Inc. and L'Oreal, S.A., a French corporation, under the Lanham Act as amended by the Anticybersquatting Consumer Protection Act, for a declaratory judgment that Network Solutions' transfer of his domain name <lorealcomplaints.com> to L'Oreal was "improper" and that his registration and use of <lorealcomplaints.com> was "not unlawful." He also seeks an injunction ordering the return of the domain name. The district court dismissed Hawes' complaint for lack of subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1).

For reasons that differ from those given by the district court, we affirm dismissal of Hawes' complaint against Network Solutions. We reverse the district court's order dismissing Hawes' complaint against L'Oreal and remand that portion of the case for further proceedings.

I

In April 1999, Hawes registered the domain name <lorealcomplaints.com> with Network Solutions, Inc. in Herndon, Virginia, and, in connection with that registration, entered into a Domain Name Registration Agreement. Hawes alleges that he registered the domain name to develop a forum in which to communicate with L'Oreal concerning problems with its products because his efforts to communicate with L'Oreal had been unsuccessful and its representatives were unable to "properly answer [Hawes'] inquiries."

A little over a year after Hawes registered <lorealcomplaints.com>, L'Oreal filed suit against Hawes in a French court, alleging infringement of L'Oreal's French trademarks. Upon learning of this French litigation, Network Solutions transmitted a "Registrar Certificate" for

the domain name <lorealcomplaints.com> to counsel for L'Oreal in
Paris, tendering control and authority over the registration of the
domain name to the French court, in accordance with Network Solu-
tions' "standard service agreement with its registrants and the dispute
policy incorporated therein." On Hawes' failure to appear before the
French court, the court entered judgment in favor of L'Oreal and
ordered the domain name <lorealcomplaints.com> to be transferred to
L'Oreal. Hawes has challenged the French court's jurisdiction
through appellate review. After Hawes received notice of the French
court's order, he wrote Network Solutions a letter stating that if Net-
work Solutions transferred the domain name pursuant to its dispute
resolution policy and the ensuing French court order, then he would
file suit in a federal court in the United States to establish that his reg-
istration and use of <lorealcomplaints.com> was not unlawful. Not-
withstanding this letter, Network Solutions transferred the name to
L'Oreal on October 5, 2000.

In April 2001, Hawes commenced this action by filing a two-count
complaint against Network Solutions and L'Oreal. In Count I, Hawes
alleged that Network Solutions breached the Domain Name Registra-
tion Agreement when it transferred <lorealcomplaints.com> to the
French court. In Count II, Hawes alleged that even though L'Oreal
owned the mark "L'Oreal," Hawes' registration and use of the
domain name <lorealcomplaints.com> was "not unlawful" under
the Lanham Act. For relief, Hawes sought a declaratory judgment
that Network Solutions' transfer of control over the domain name
<lorealcomplaints.com> to French counsel for deposit with the
French court was "not permitted" and that his registration and use of
that domain name was "not unlawful." He also requested that the
court "reactivate the domain name . . . and/or transfer said domain
name to [Hawes]." Each of the two counts are grounded on 15 U.S.C.
§ 1114(II) (although no statutory section with that number exists).

On Network Solutions' motion to dismiss, filed under Federal
Rules of Civil Procedure 12(b)(1) and 12(b)(6), District Judge Gerald
Lee dismissed the complaint against Network Solutions under Rule
12(b)(1) for lack of subject matter jurisdiction. On L'Oreal's motion
to dismiss under Rule 12(b)(1), which was assigned to District Judge
Claude Hilton, Judge Hilton denied the motion without prejudice to
L'Oreal's ability to resurrect the issue of subject matter jurisdiction

at the conclusion of discovery. L'Oreal filed an answer and counter-claims for trademark infringement and trademark dilution.

After discovery proceeded for about four months, L'Oreal renewed its motion under Rule 12(b)(1), arguing to Judge Hilton that Judge Lee's prior dismissal of the complaint against Network dictated dismissal of the complaint against L'Oreal because, if the district court were not to dismiss the case, "we [would be] left in the terribly awkward position of having this Court rule inherently on the propriety of Network Solutions' actions, namely the transfer of the certificate of registration pursuant to a French court order, in the absence of Network Solutions." Judge Hilton responded:

> I believe that [Hawes has] the right to come in, if this domain name has been improperly transferred, whether it has or not is another question, but if it has been improperly transferred, [he has] the right to come in and ask for that domain name back. But now I find myself in a posture where my colleague has dismissed out of the case the very person who has to be here in order to get that accomplished.

Judge Hilton then referred the matter back to Judge Lee. A few days later Judge Lee granted L'Oreal's motion to dismiss under Rule 12(b)(1). Because the complaint against it had been dismissed, L'Oreal voluntarily dismissed its counterclaims.

From the final judgment dismissing the claims against both Network Solutions and L'Oreal for lack of subject matter jurisdiction, Hawes filed this appeal.

## II

In dismissing Count I of the complaint, which alleged that Network Solutions improperly transferred the domain name <lorealcomplaints.com>, the district court construed the claim as one under 15 U.S.C. § 1114(2)(D)(i)(II)(bb) and then gave its reason for dismissing it as follows:

> [Hawes] never alleges that any underlying ACPA action was in existence when [Network Solutions] allegedly transferred

the LOREALCOMPLAINTS.COM domain name. Without the existence of an underlying action, [Network Solutions], as a domain name registry, could not be in violation of 15 U.S.C. § 1114.

The district court concluded that "[t]herefore, this Court does not have subject matter jurisdiction over [Hawes'] claim against [Network Solutions] pursuant to federal question jurisdiction."

In dismissing Count II of the complaint, which was asserted against L'Oreal to obtain the declaration that Hawes' registration and use of the domain name <lorealcomplaints.com> was "not unlawful under Title 15, United States Code, § 1114(II) [sic]," the district court concluded that it did not have subject matter jurisdiction for three reasons. First, it found that there was no justiciable case or controversy, explaining that "[a] mere desire to use a trademark in connection with a product does not constitute a course of conduct placing a party in a legally adversarial conflict with another party." Second, construing Count II as a claim under 15 U.S.C. § 1114(2)(D)(v), the district court concluded that it lacked jurisdiction to hear a claim under that section because the domain name <lorealcomplaints.com> was transferred to L'Oreal pursuant to an order of a French court and therefore "is exempt from 15 U.S.C. § 1114's jurisdictional grant because liability under § 1114(2)(D)(v) for transfer of a domain name depends on the implementation of a reasonable policy effecting that transfer." The court explained, "L'Oreal's receipt of the domain name was pursuant to a court order, and not pursuant to the implementation of [Network Solutions'] reasonable policy." Finally, based on its first two reasons, the court indicated an unwillingness to exercise discretion to grant declaratory relief based on the discretionary language of 28 U.S.C. § 2201.

In reaching these conclusions, the district court was required to interpret the complaint with scant help from Hawes' now-replaced counsel, who based both counts of the complaint on "15 U.S.C. § 1114(II)," a statutory provision that does not exist. Nonetheless, the district court's conclusions that Count I against Network Solutions was based on § 1114(2)(D)(i)(II)(bb) and that Count II against L'Oreal was based on § 1114(2)(D)(v) are not only eminently reasonable but also undoubtedly correct in light of the allegations made and

relief sought with respect to each count. *See* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *Anderson v. Foundation for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 505 (4th Cir. 1998) ("Federal 'notice' pleading standards require that the complaint be read liberally in favor of the plaintiff").

Count I, which Hawes denominated "Improper Transfer of Domain Name," alleges that Network Solutions "has transferred, suspended, or otherwise modified the domain name 'LOREALCOM-PLAINTS.COM' contrary to Title 15 of the United States Code, § 1114(II) and [Hawes] is thereby entitled to injunctive relief." This language mirrors the language of § 1114(2)(D)(i)(II)(bb), which describes one of the three circumstances in which a domain name registrar such as Network Solutions may be subject to suit for injunctive relief. Specifically, § 1114(2)(D)(i) provides:

> (I)   A domain name registrar . . . that takes any action described under clause (ii) ["refusing to register, removing from registration, transferring, temporarily disabling, or permanently canceling a domain name"] affecting a domain name shall not be liable for monetary relief or, except as provided in subclause (II), for injunctive relief, to any person for such action, regardless of whether the domain name is finally determined to infringe or dilute the mark.

> (II)   A domain name registrar . . . may be subject to injunctive relief only if such registrar . . . has—

>> (aa)   not expeditiously deposited with a court, in which an action has been filed regarding the disposition of the domain name, documents sufficient for the court to establish the court's control and authority regarding the disposition of the registration and use of the domain name;

>> (bb)   transferred, suspended, or otherwise modified the domain name during the pendency of the action, except upon order of the court; or

(cc) willfully failed to comply with any such court order.

It is therefore apparent that Hawes brought Count I under § 1114(2) for injunctive relief based on subpart (D)(i)(II)(bb).

Count II, which Hawes denominated an "Action under the Anticybersquatting Consumer Protection Act," alleges that "the mark owner of 'L'Oreal' has received notice that [Hawes] intended to file a civil action to establish that the registration or use of . . . 'LOREALCOMPLAINTS.COM' by [Hawes] is not unlawful." In this count, Hawes

> asks that this Honorable Court hold that the registration and/or use of the domain name "LOREALCOMPLAINTS.COM" by plaintiff is not unlawful under Title 15, United States Code, § 1114(II) and that this Honorable Court reactivate the domain name "LOREALCOMPLAINTS.COM" and/or transfer said domain name to [Hawes].

This language mirrors precisely the language of § 1114(2)(D)(v), which provides:

> A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

It is therefore apparent that Hawes brought Count II under subpart (D)(v) of § 1114(2).

Agreeing with the district court's identification of the statutory provisions on which Counts I and II rest, we now address whether the district court properly dismissed them for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

A

Count I, brought under 15 U.S.C. § 1114(2)(D)(i)(II)(bb) against Network Solutions, describes one of the limited circumstances in which a domain name registrar, who is otherwise exempt from trademark liability, may be subject to suit for injunctive relief. In our recent case of *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona*, ___ F.3d ___, No. 02-1396, 2003 WL 21259842 (4th Cir. June 2, 2003), we reviewed the provisions of 15 U.S.C. § 1114 that were added by Congress in 1999 through the passage of the Anticybersquatting Consumer Protection Act ("ACPA"), Pub. L. No. 106-113, § 3001 *et seq.*, 113 Stat. 1501A-545 (codified in scattered sections of 15 U.S.C.). We explained that the ACPA, in creating trademark liability for cybersquatters, also "provide[d] limited liability for trademark infringement by registrars who participate in the administration of the registration, transfer, and cancellation of domain names pursuant to a 'reasonable policy' that is consistent with the purposes of the trademark laws." *Id.* at *6. A complaint under the ACPA against a registrar is thus a claim under the trademark laws for which federal courts have subject matter jurisdiction under 28 U.S.C. § 1338. Section 1338 provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . trademarks." Section 1338 was therefore sufficient to confer federal question subject matter jurisdiction on the district court. *See Bell v. Hood*, 327 U.S. 678, 685 (1946) (holding that federal question jurisdiction existed because "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another"); *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("[I]f the plaintiff really makes a substantial claim under an act of Congress there is jurisdiction whether the claim ultimately be held good or bad").

For this reason, the district court erred in dismissing Count I under Federal Rule of Civil Procedure 12(b)(1). The court, instead, should have considered Hawes' claims under Federal Rule of Civil Procedure 12(b)(6), on which Network Solutions also relied in its motion to dismiss, because resolution of the motion inherently requires an assessment of whether Hawes has alleged all the elements necessary to state a claim under § 1114(2)(D)(i)(II)(bb). *See Montana-Dakota*

*Utils. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 249 (1951) ("As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action"); *Fogel v. Chestnutt*, 668 F.2d 100, 105-07 (2d Cir. 1981) (Friendly, J.) (explaining the occasionally elusive distinction between lack of subject matter jurisdiction and failure to state a claim).

Considering the complaint against the standards applicable to a Rule 12(b)(6) motion, Hawes failed to state a claim upon which relief can be granted and therefore Count I must be dismissed on that basis. The statutory provision upon which Count I rests exposes a registrar to liability under the Lanham Act — by providing an exception to a registrar's general exemption from liability under the Act — when the registrar, without court permission, transfers a domain name "during the pendency of [an] action." 15 U.S.C. § 1114(2)(D)(i)(II)(bb).

Hawes did allege that Network Solutions tendered control over the domain name to the French court after L'Oreal commenced an action in France against Hawes for infringing L'Oreal's French trademarks, but the pendency of a foreign action is irrelevant to the question of whether a registrar is exposed to liability under the Lanham Act. This conclusion that the French proceedings are irrelevant to a registrar's liability under § 1114(2)(D)(i) is compelled by the language of the Lanham Act as amended by the ACPA, as well as its scope and structure.

The ACPA creates a cause of action for cybersquatting against anyone who registers, traffics in, or uses a domain name that is identical or confusingly similar to a trademark with the bad-faith intent to profit from the good will associated with the trademark. *See* 15 U.S.C. § 1125(d)(1). It also creates a cause of action for reverse domain name hijacking against trademark owners who misuse or abuse their rights in bringing a cybersquatting action. *See* 15 U.S.C. § 1114(2)(D)(v); *Barcelona*, ___ F.3d ___, 2003 WL 21259842, at *6. The ACPA thus protects both trademark owners and domain name registrants. In creating these causes of action, Congress intended expressly to limit the liability of domain name registrars under the Act as long as the domain name registrars comply with the conditions stated in § 1114(2)(D)(i). As congressional reports explain, the ACPA

provides a limitation of liability for registrars to "encourage[ ] domain name registrars and registries to work with trademark owners to prevent cybersquatting through . . . the suspen[sion], cancel[ation], or transfer [of] domain names pursuant to a court order or in the implementation of a reasonable policy prohibiting cybersquatting." H.R. Rep. No. 106-412, at 15 (1999); S. Rep. No. 106-140, at 11 (1999). Without such limitation of liability, all registrars would potentially have been exposed to the offense of cybersquatting because they register and traffic in domain names that could be infringing or diluting trademarks protected by the Lanham Act. *See* 15 U.S.C. § 1125(d)(1). Thus, § 3004 of the ACPA, which contains the language codified at 15 U.S.C. § 1114(2)(D)(i) and is captioned "Limitation on Liability," generally exempts domain name registrars from the liability imposed by the Act for cybersquatting or reverse domain name hijacking. Because the provisions conditioning the limitation of liability in § 1114(2)(D)(i) relate to liability imposed by the Lanham Act as amended by the ACPA, cooperating conduct by registrars with respect to foreign courts under foreign law is given no relevance in interpreting § 1114(2)(D)(i)(II)(bb) insofar as it requires the pendency of an "action."

In this case, there was no anticybersquatting action or reverse anticybersquatting action under the ACPA pending in any court at the time Network Solutions transferred the domain name <lorealcomplaints.com>. Because there was no action adjudicating Lanham Act liability, there could be no allegation that Network Solutions was not cooperating with a court in a domain name dispute involving domain name hijacking or reverse domain name hijacking, and thus there could be no basis to consider an exception from the limitation of liability. Accordingly, the district court was correct in concluding that the complaint failed to include a necessary averment of fact in support of a claim to find Network Solutions' conduct fell within the exception to the limitation of liability granted by § 1114(2)(D)(i).

Thus, we agree with the district court that the claim against Network Solutions must be dismissed, but we affirm this conclusion on the basis of Federal Rule of Civil Procedure 12(b)(6).

B

Count II against L'Oreal is brought under 15 U.S.C. § 1114(2)(D)(v), which "authorizes a domain name registrant to sue

trademark owners for 'reverse domain name hijacking.'" *Barcelona.com*, ___ F.3d at ___, 2003 WL 21259842, at *6. Under § 1114(2)(D)(v), "a domain name registrant who is aggrieved by an overreaching trademark owner may commence an action to declare that the domain name registration or use by the registrant is not unlawful under the Lanham Act" and to obtain injunctive relief for return of the domain name. *Id.*

The district court dismissed Hawes' reverse domain name hijacking claim, concluding that, under Federal Rule of Civil Procedure 12(b)(1), it lacked subject matter jurisdiction. The court supported this conclusion first by finding that there was no justiciable case or controversy after the French court ordered transfer of the domain name to L'Oreal. "[Hawes] no longer had the ability to use the disputed domain name . . . because L'Oreal now owned it. [Hawes'] desire to use the domain name is insufficient." We disagree with that conclusion. Simply because L'Oreal now has the domain name does not end the controversy over Hawes' right to use the name. Indeed, the controversy remains alive with Hawes' claim under § 1114(2)(D)(v) to require transfer of the name back to Hawes.

The district court also supported its conclusion that it lacked subject matter jurisdiction because one element of Hawes' claim under § 1114(2)(D)(v) was not established — "L'Oreal's receipt of the domain name was pursuant to a court order, and not pursuant to the implementation of [Network Solutions'] reasonable policy." Implicitly, the court concluded that the element was a jurisdictional one. Again we disagree.

While an element of a claim under § 1114(2)(D)(v), the requirement that the transfer be pursuant to a reasonable policy is not jurisdictional. A § 1114(2)(D)(v) claim has four elements:

> [T]o establish a right to relief against an "overreaching trademark owner" under this reverse hijacking provision, a plaintiff must establish (1) that it is a domain name registrant; (2) that its domain name was suspended, disabled, or transferred under a policy implemented by a registrar as described in 15 U.S.C. § 1114(2)(D)(ii)(II); (3) that the owner of the mark that prompted the domain name to be

suspended, disabled, or transferred has notice of the action by service or otherwise; and (4) that the plaintiff's registration or use of the domain name is not unlawful under the Lanham Act as amended.

*Barcelona.com*, ___ F.3d at ___, 2003 WL 21259842, at *8. But the statute makes none of these elements jurisdictional. Rather, jurisdiction is conferred by the fact that the cause of action provided under § 1114(2)(D)(v) is part of the ACPA which amended the Trademark Act of 1946 (the Lanham Act), and as such is a civil action relating to trademarks. Section 1338 of Title 28 confers subject matter jurisdiction on federal courts for actions relating to trademarks. Thus, if Hawes failed to allege any of the elements for a reverse domain name hijacking claim, L'Oreal's remedy would be to file a motion for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Although we agree with the district court that the failure to allege one of the required elements would be fatal to recovery, it would not be fatal to the district court's jurisdiction.

But even on the district court's assumption that a jurisdictional element has been omitted because Network Solutions' policy was not involved, the court misread the complaint. The complaint alleges that Network Solutions breached its Domain Name Registration Agreement by transferring control over the domain name to a French court or, more precisely, to counsel for L'Oreal for deposit in the French court. It asserted that "[a]s a direct and proximate cause of said material breach of said Domain Name Registration Agreement, [Hawes] . . . seeks an interpretation of said Domain Name Registration Agreement . . . as to whether Network [Solutions] is allowed to tender and/or transfer to the Republic of France complete control and authority over the registration of the domain name." The complaint also quotes from the letter that Hawes' lawyer sent to Network Solutions and copied to L'Oreal indicating an intent to file an action "to establish that the registration and/or use of the above-referenced domain name by [Hawes] is not unlawful." Finally, the complaint actually included a copy of the Domain Name Registration Agreement which includes Network Solutions' "Domain Name Dispute Policy," pursuant to which Network Solutions purportedly transferred control over the domain name, through L'Oreal's lawyer in France, to the French court.

Fully and fairly read, the complaint alleges that the transfer of the domain name took place pursuant to Network Solutions' Domain Name Dispute Policy as contained in the Domain Name Registration Agreement, and it was because of that policy, as interpreted by Network Solutions, that the Registrar Certificate was filed with the French court and that the domain name was ultimately transferred. Because L'Oreal is alleged to have received the domain name <loreal-complaints.com> on the basis of Network Solutions' interpretation of the scope of its "Domain Name Dispute Policy," the second element for a cause of action under § 1114(2)(D)(v) would appear to have been adequately alleged.

In sum, as we note here and in Part II.A above, the district court had subject matter jurisdiction over Hawes' claim brought under the Lanham Act as amended by the ACPA, and Hawes' complaint purports to state a claim against L'Oreal alleging a cause of action under that Act.*

We should add that our conclusion that Hawes' complaint states a cause of action under § 1114(2)(D)(v) over which a United States court may exercise jurisdiction does not imply any disrespect of any French court that may have taken jurisdiction of a related dispute in France. The cause of action supplied by Congress in the ACPA is an American cause of action provided to protect domain name registrants

---

*An additional rationale advanced by the district court in dismissing the case was that it possessed discretion under the Declaratory Judgment Act to decline to grant declaratory relief. It is true that a district court possesses discretion in deciding whether to grant a declaratory judgment under 28 U.S.C. § 2201. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants"). This discretion finds its justification in the particular language that Congress used in § 2201 authorizing federal courts to enter declaratory judgment. *See id.* (highlighting 28 U.S.C. § 2201's "textual commitment to discretion"). But a federal district court possesses no similar discretion in adjudicating an action brought under 15 U.S.C. § 1114(2)(D)(v), in which Congress created a new and independent cause of action and, unlike in § 2201, used no language indicating that a district court may exercise discretion regarding whether to grant declaratory relief.

from overreaching trademark owners, by supplying a cause of action for adjudication in a federal court under the law of the United States. *See Barcelona.com*, ___ F.3d at ___, 2003 WL 21259842, at *9 ("The text of the ACPA explicitly requires application of the Lanham Act, not foreign law, to resolve an action brought under 15 U.S.C. § 1114(2)(D)(v)"). Adjudication of an action brought under § 1114(2)(D)(v) involves neither appellate-like review of, nor deference to, any simultaneously pending actions in foreign jurisdictions just as adjudication of an action brought under § 1114(2)(D)(v) on the heels of an administrative proceeding under Network Solutions' dispute resolution policy by the World Intellectual Property Organization or some other dispute resolution provider is independent of, and involves neither appellate-like review of nor deference to, the underlying proceeding. *See id.* at *7 ("We give the decision of the [World Intellectual Property Organization] panelists no deference in deciding this action under § 1114(2)(D)(v)"); *id.* at *6 (stating that the uniform dispute resolution policy that is part of domain name registration agreements "explicitly anticipates that judicial proceedings will continue under various nations' laws applicable to the parties"); *id.* at *7 ("[B]ecause a uniform dispute resolution policy decision is susceptible of being grounded on principles foreign or hostile to American law, the ACPA authorizes reversing a [World Intellectual Property Organization] panel decision if such a result is called for by application of the Lanham Act"). In both circumstances, the § 1114(2)(D)(v) action involves an independent inquiry to determine whether the registration or use of the domain name is "not unlawful" under the Lanham Act as amended by the ACPA.

Although a § 1114(2)(D)(v) cause of action may be brought in a United States court and requires application of only United States law, this fact does not leave the foreign trademark owner bereft of protection. The trademark owner remains free to file a counterclaim or counterclaims, as L'Oreal did in this case, asserting any rights that it may have under United States law. *See* 15 U.S.C. § 1125; *Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*, 329 F.3d 359 (4th Cir. 2003) (recognizing the reach of the Lanham Act to include foreign commerce).

In holding that Hawes has alleged a cause of action under 15 U.S.C. § 1114(2)(D)(v) over which the district court had subject mat-

ter jurisdiction, we do not imply whether he will succeed in his further prosecution of this action. Nonetheless, the action must be entertained, and therefore we remand this case for further proceedings against L'Oreal.

In view of our reversal of the district court's dismissal order, we expect that the district court will allow L'Oreal to reinstate its counterclaims for adjudication with Hawes' claim under § 1114(2)(D)(v).

*AFFIRMED IN PART, REVERSED*
*IN PART, AND REMANDED*