SOTOMAYOR, Circuit Judge.
 

 Broadly framed, this appeal implicates the contentious and ongoing conflict between trademark rights-holders and Internet domain-name registrants. Where the former seek to prevent consumer confusion by policing others’ use of the trademarks that identify their goods, services or identities, the latter have acquired
 
 *373
 
 rights in domain names, which may be identical or confusingly similar to trademarks, through a first-come, first-serve process that does not consider trademark rights. Plaintiff-appellee Lawrence Sto-rey seeks a declaration that his use of the domain name “cello.com” is lawful, while defendants-appellants Cello Holdings, L.L.C. and Cello Music and Film Systems, Inc. (collectively “Cello”) assert that their uncontested rights to use the trademark “cello” in connection with the sale of audio equipment make their claim to the registration of “cello.com” superior to Storey’s claim. Relying on the Anticybersquatting Consumer Protection Act (“ACPA”), Pub.L. No. 106-113, 113 Stat. 1501 (1999), Cello accuses Storey of “cyberpiracy,” “cybersquatting,” or “domain-name hijacking,” rhetoric that suggests the illegal possession or occupation of property belonging to Cello under the trademark laws. Storey, in turn, paints Cello’s litigious conduct as “reverse domain-name hijacking” or the overreaching use of the mechanisms established to remedy cybersquatting against a registrant with a legitimate interest in his domain name.
 

 As this dispute comes before us on appeal, however, the issues are largely procedural and primarily concern the impact of the extended litigation that has already occurred between the parties on the arguments that the parties presented to the district court. An initial action (the “First Action”) brought by Cello against Storey was dismissed “with prejudice,” but a subsequent alternative dispute-resolution panel, operating under the terms of the Uniform Domain-Name Dispute-Resolution Policy (“UDRP”), ordered the domain name “eello.com” transferred to Cello. Storey then filed a complaint (the “Instant Action”) in the United States District Court for the Southern District of New York (Chin, /.), bringing a cause of action under the ACPA as provided in 15 U.S.C. § 1114(2)(D)(v), and seeking re-transfer of the domain name and a declaration that his use of “cello.com” is lawful. Storey argued,
 
 inter alia,
 
 that the transfer ordered by the UDRP panel was improper because Cello was barred from bringing its claims before that panel because the First Action had been dismissed with prejudice. Cello, in turn, argued that the district court lacked subject matter jurisdiction to review the panel’s decision and was an improper forum under the UDRP, and, alternatively, that
 
 Storey
 
 was barred from bringing the Instant Action because the UDRP panel decision, which had considered and rejected Storey’s
 
 res judicata
 
 defense, was binding. The district court ruled in Storey’s favor, holding that the preclusive effect of the First Action barred Cello “from reasserting its claims in the arbitration proceedings.”
 
 Storey v. Cello Holdings, L.L.C.,
 
 182 F.Supp.2d 355, 362 (S.D.N.Y.2002).
 

 This appeal, accordingly, addresses the effect that the two prior proceedings — the First Action and the UDRP administrative proceeding — have on Storey’s claim for relief under § 1114(2)(D)(v) in the Instant Action. We easily conclude that the district court had subject matter jurisdiction over Storey’s claim inasmuch as the ACPA provides for federal jurisdiction over claims brought under § 1114(2)(D)(v).
 
 See
 
 15 U.S.C. § 1121(a). We also reject Cello’s argument that the Southern District of New York was an inappropriate venue for Storey’s claim.
 

 Turning to the merits of the district court’s ruling, we vacate the judgment of the district court, noting two errors in its analysis. First, the district court erred in focusing on whether Cello was barred from bringing the UDRP administrative proceeding because the issue in the Instant Action is neither the
 
 res judicata
 
 effect of
 
 *374
 
 the First Action on the UDRP panel, nor the
 
 res judicata
 
 effect of the UDRP proceeding on the Instant Action. The district court appears to have believed that the Instant Action involved review or enforcement of the UDRP panel decision. Because a domain-name registrant’s claim under § 1114(2)(D)(v) does not involve review of a UDRP decision, the district court’s inquiry should have been on Cello’s right in the Instant Action to contest the lawfulness of Storey’s use of “cello.com” directly under the ACPA. Second, we hold that the
 
 res judicata
 
 effect of the First Action is not dispositive in the Instant Action as Cello may have a claim premised on facts arising after the First Action. The “bad faith intent to profit” element of a trademark rights-holder’s ACPA claim may be premised on the domain-name registrant’s ongoing use of the domain name. In this respect ACPA rights differ from traditional property rights in land, to which ownership of a domain name is often analogized. The judgment in the First Action, therefore, does not bar Cello from arguing that Storey’s use of “cello.com” is unlawful insofar as Cello relies on conduct post-dating the First Action to make its claim.
 

 The district court also granted Storey’s motion for sanctions against both Cello and its counsel under Fed.R.Civ.P. 11(b). Due in part to the lack of well-established law in this area and due in part to the limited scope of the notice Cello and its counsel received, we also vacate the Rule 11 sanctions.
 

 BACKGROUND
 

 A. The parties
 

 In 1997, Storey registered the domain name
 
 [1]
 
 “cello.com” with Network Solutions, Inc. (“NSI”), a domain-name registrar,
 
 [2]
 
 as part of an attempt to register approximately twenty musical-instrument domain names. Cello Holdings, a Delaware limited liability company, registered the trademark “Cello” on the federal register for use in the audio equipment business in 1995. Cello Music and Film Systems, Inc. sold high-quality audio equipment, although it had allegedly ceased operations by the time the Instant Action was initiated.
 

 B. The First Action
 

 In 1997, Cello brought the First Action against Storey, initially alleging only trademark dilution. After discovery and while cross-motions for summary judgment were pending, the ACPA was signed into law, and Cello sought to add an ACPA claim. After requesting and receiving additional briefing on the ACPA, the district court held that genuine issues of material fact existed as to all the elements of Cello’s trademark and ACPA claims, and granted
 
 *375
 
 Cello leave to amend its complaint,
 
 see Cello Holdings, L.L.C. v. Lawrence-Dahl Cos.,
 
 89 F.Supp.2d 464, 472-75 (S.D.N.Y. 2000), which Cello did.
 

 On August 15, 2000, shortly before the case was scheduled for trial, the district court issued an order stating the following:
 

 It having been reported to this Court that the above entitled action has been settled, IT IS ORDERED that this action be, and the same hereby is, discontinued with prejudice but without costs; provided, however, that if settlement is not consummated within thirty days of the date of this order, either party may apply by letter within the 30-day period for restoration of the action to the calendar of the undersigned, in which event the action will be restored.
 

 Neither party applied for restoration within the thirty day period. Correspondence from Cello’s counsel to Storey’s counsel, dated August 16, 2000, suggests that both parties received this order, states that the parties had informed Judge Chin that they believed they had “reached an agreement for voluntarily [sic] dismissal of this action,” and offers to draft “some general release language.” It also reports a conversation that occurred between Cello’s counsel and Judge Chin’s courtroom deputy as follows: “[The courtroom deputy] asked if I thought we could work out the issues within thirty days. I told him that I thought we could. He said that was good, because he was going to have Judge Chin issue a ‘thirty-day order.’ ”
 

 The information conveyed to the district court by Cello’s counsel that led to this thirty-day order, however, may not have been an accurate description of the agreement between the parties. In its January 24, 2002 Opinion in the proceedings now on appeal, the district court described the events leading to its August 15, 2000 order as follows: “Cello’s counsel advised the Court that the case had been ‘settled.’ In fact, as the Court has now learned, the First Action had not actually ‘settled,’ but instead Cello had merely decided to discontinue its claims. The parties did not enter into a settlement agreement.”
 
 Storey,
 
 182 F.Supp.2d at 358. Cello contends that, although “[attempts were made to negotiate a settlement agreement, ... [n]o agreement ... was reached other than to enter a voluntary dismissal of the First Action.”
 

 C. The September 25 Letter
 

 On September 25, 2000, after the thirty-day window for restoration of the First Action had passed, Storey’s counsel sent a letter (the “September 25 Letter”) to “Cello Limited,” an affiliate of Cello Holdings and a licensee of the “cello” mark. The letter stated the following:
 

 We represent Lawrence Storey, the owner of the domain name “cello.com” in which you may have an interest. We recently successfully concluded trademark litigation in which Mr. Storey’s ownership interest was challenged by Cello Holdings, LLC and Cello Music and Films Systems, Inc. Mr. Storey is now offering the domain name for sale. Please contact my associate ... if you have any interest.
 

 D. The UDRP proceedings
 

 Like all domain-name registration agreements, Storey’s registration agreement with NSI incorporated the terms of the UDRP,
 
 [3]
 

 available at
 
 
 *376
 
 http://www.icann.org/dndr/udrp/policy.htm, which, in Paragraph 4 (entitled
 
 “Mandatory Administrative Proceeding
 
 ”) required Storey
 
 to
 
 submit to an administrative proceeding to resolve any so-called “cybers-quatting” disputes — disputes brought by a third party with trademark rights in a mark that is similar to a domain name in order to seek transfer of the domain-name registration. Paragraphs 4(a)-(c) of the UDRP establish the substantive elements that the trademark-rights-holder/complainant must prove to prevail on a cybersquat-ting claim in a UDRP administrative proceeding: the domain name is “identical or confusingly similar to” the mark; the registrant has “no rights or legitimate interests in respect of the domain name”; and the “domain name has been registered and is being used in bad faith.”
 

 On October 10, 2000, Cello Holdings filed a complaint under the UDRP (the “UDRP Administrative Proceeding”) with eResolution, a dispute resolution agency designated by Storey’s agreement with NSI, seeking transfer of the domain name “cello.com” In a section seeking information on “Other Proceedings,” the complaint referenced the First Action, noting that “Cello Holdings LLC voluntarily dismissed the case last month so as to avail itself of this dispute resolution policy which was not available at the time of the 1997 filing, thereby saving significant time and expense over the continued litigation.” The complaint did not refer to the September 25 Letter.
 

 Storey filed a response in UDRP Administrative Proceeding, arguing first that the “proceeding is barred by the previous discontinuance with prejudice of complainant’s identical claims” in the First Action “by the doctrine of
 
 res judicata”
 
 and, in the alternative, that the claim asserted in the UDRP complaint “is in any event wholly lacking in merit.”
 

 On December 21, 2000, a decision was issued in the UDRP Administrative Proceeding, directing that “cello.com” be transferred to Cello Holdings. Addressing Storey’s
 
 res judicata
 
 defense, the decision noted that Storey’s “assertions are at variance with this Tribunal’s reading of the evidence he submitted and are expressly rejected,” and that “as [Storey] has made no attempt to enjoin the actions of eReso-lution or this Tribunal, a claim that jurisdiction is absent or that [Storey] has not consented to participate in these proceedings is likewise unpersuasive.”
 

 E. Filing the Instant Action
 

 On January 10, 2001, Storey filed the Instant Action against both Cello parties in the District Court for the Southern District of New York, which was assigned to Judge Chin after it was determined to be similar to the First Action. Pursuant to the ACPA, 15 U.S.C. § 1114(2)(D)(v), Storey sought relief “declaring [his] use of the ‘cello.com’ domain name lawful” and “awarding injunctive relief reactivating the domain name ‘cello.com’ for plaintiffs [sic] Storey’s benefit.”
 

 F. Transfer of the domain name
 

 UDRP Paragraph 4(k) provides that a domain-name registrar will implement a UDRP panel’s decision and transfer the domain name ten business days after being notified of the decision unless it receives notice that the domain-name registrant has “commenced a lawsuit against the complainant in a jurisdiction to which the
 
 *377
 
 complainant has submitted under
 
 Paragraph 3(b) (xiii)
 
 of the Rules of Procedure.” NSI received notification that the UDRP panel had rendered its decision on December 27, 2000, and informed Storey and Cello Holdings that the domain name would be transferred on January 11, 2001.
 
 [4]
 
 Storey filed the Instant Action in the Southern District of New York on January 10, 2001, and NSI implemented the transfer of “cello.com” to Cello Holdings as ordered by the panel.
 

 On February 1, 2001, NSI filed a Registrar Certificate tendering control and authority over the “cello.com” domain name to the district court and reciting that no further transfers would occur pending the district court’s further order.
 

 G. Virginia state court action
 

 On February 28, 2001, Cello filed a motion to confirm the arbitration award in the Circuit Court of Fairfax County, Virginia. On May 9, 2001, the Virginia court stayed the action pending a resolution of the Instant Action in the Southern District of New York, reasoning that the Southern District “is a more appropriate forum to hear and decide the merits of Mr. Storey’s claim of
 
 res judicata
 
 as the [First Action] was heard and resolved in that Court.”
 

 H. Pleadings and motions in the Instant Action
 

 On March 7, 2001, Cello filed an answer, signed by both Herrick, Feinstein LLP and Odin, Feldman
 
 &
 
 Pittleman, P.C., setting forth legal defenses, factual contentions, and denials.
 

 At the initial conference on April 6, 2001, the district court “raised the issue of whether Cello was barred from seeking the relief it obtained in the arbitration proceedings because of the
 
 res judicata
 
 effect of the dismissal with prejudice of the First Action.”
 
 Storey,
 
 182 F.Supp.2d at 361. In a letter dated April 13, 2001 from Herrick, Feinstein LLP (the “April 13 Letter”), Cello raised a defense to this
 
 res judicata
 
 argument, alleging that the September 25 Letter “was the basis for the arbitration” and that “[s]ince this letter post dates the [First Action] ... [the letter] is the basis of a new cause of action.”
 

 On May 16, 2001, Storey moved for an order imposing sanctions under Fed.R.Civ.P. 11(b)(1)-(4) on both Cello and its counsel, and stated that the sanctions would be predicated on “a frivolous answer denying the material allegations of the complaint.” Cello did not withdraw its answer. In June and July of 2001, cross-motions for summary judgment were filed, and further briefing on the sanctions motions occurred in late July and early August.
 

 I.District court opinion and judgment in the Instant Action
 

 In a January 23, 2002 Opinion, the district court ruled in Storey’s favor on the
 
 res judicata
 
 issue, holding that “Cello was barred from reasserting its claims in the arbitration proceedings.”
 
 Storey,
 
 182 F.Supp.2d at 362. The district court reasoned that “the dismissal of the First Action [was] ‘with prejudice’ ” and that “[t]he relief Cello sought in the arbitration proceeding was precisely the relief Cello had sought in the First Action — transfer of the registration to the domain name ‘cello.com’ from Storey to Cello — for precisely the same reasons — the alleged confusion between Cello’s mark ‘Cello’ and ‘cello.com.’ ”
 
 Id.
 
 The district court rejected Cello’s argument that Cello “brought the arbitration proceedings because Storey engaged in a
 
 *378
 
 ‘new act of cybersquatting’ when his attorneys wrote the September 25th Letter.”
 
 Id.
 
 The district court concluded that “[t]he September 25th Letter was not an act of ‘cybersquatting” ’ and rather was “simply a reassertion by Storey of his rights to the domain name that had been confirmed by the dismissal of the First Action ‘with prejudice.’ ”
 
 Id.
 
 at 363. In sum, “[t]he September 25th Letter was not a new transaction creating a new claim, for Cello had already given up any claim to rights in the domain name in question.”
 
 Id.
 

 The district court also imposed sanctions against both Cello and its counsel, appellants Herrick, Feinstein LLP and Odin, Feldman
 
 &
 
 Pittleman, P.C. (collectively, the “Sanctioned Counsel”), listing eight factual assertions or denials that were lacking evidentiary support or unwarranted on the evidence, and five legal arguments or defenses not objectively reasonable and without reasonable basis in law.
 
 See id.
 
 at 366-69. It also held that Cello filed its answer and defenses with the improper purpose of harassing Storey, causing unnecessary delay, and needlessly increasing litigation costs.
 
 See id.
 
 at 369. Finally, the district court concluded “that ‘unusual circumstances’ exist that warrant the award to Storey of reasonable attorney’s fees and costs incurred as the result of the Rule 11 violations.”
 
 Id.
 

 On February 15, 2002, the district court entered judgment for Storey on the merits and ordered that “all right, title and interest in the domain name ‘cello.com’ be and hereby is vested in plaintiff Lawrence Storey, and that ... [NSI] is directed to transfer ownership of the domain name ‘cello.com’ to plaintiff Lawrence Storey within 30 days.” As Rule 11 sanctions, the district court ordered Cello and the Sanctioned Counsel, jointly and severally, to pay $18,000 in attorneys’ fees plus the costs of the district court action.
 

 DISCUSSION
 

 The issues addressed in the Instant Action are strongly influenced by the two prior proceedings, namely the First Action and the UDRP Administrative Proceeding. The district court concluded that the First Action barred Cello from bringing the UDRP Administrative Proceeding and that Storey was therefore entitled to the domain name “cello.com.” In contrast, we conclude that the UDRP panel decision is relevant only insofar as it permits Storey to file the Instant Action under the ACPA cause of action provided in § 1114(2)(D)(v). For substantially the same reason, we reject Cello’s argument that the UDRP panel’s rejection of the
 
 res judicata
 
 defense has any bearing on our consideration of this issue on appeal. Instead, the only
 
 res judicata
 
 question is whether the First Action bars Cello from contesting Storey’s use of “cello.com,” and, as a result, entitles Storey to the relief he seeks here.
 

 Turning to the merits of the
 
 res judicata
 
 issue, we note that the ACPA treats rights to registration and use of a domain name as contingent upon the registrant’s ongoing use of the domain name without a “bad faith intent to profit” from a mark.
 
 See
 
 15 U.S.C. § 1125(d)(l)(A)(i). We therefore disagree with the district court’s conclusion that the Instant Action, predicated in part on the September 25 Letter, is “simply a reassertion by Storey of his rights to the domain name that had been confirmed by the dismissal of the First Action ‘with prejudice.’ ”
 
 Storey,
 
 182 F.Supp.2d at 363. Because Cello’s ACPA cause of action is predicated on conduct that post-dated the First Action, we hold that
 
 res judicata
 
 does not bar the Instant Action.
 

 I. Subject Matter Jurisdiction
 

 Cello first argues that the district court lacked subject matter jurisdiction to hear
 
 *379
 
 Storey’s complaint in the Instant Action because the First Action does not provide jurisdiction and the Southern District of New York is not an appropriate venue under the UDRP to review a transfer order. Upon
 
 de novo
 
 review of the district court’s conclusions of law,
 
 see In re Vogel Van & Storage, Inc.,
 
 59 F.3d 9, 11 (2d Cir.1995), we hold that the district court properly concluded that it had jurisdiction over the Instant Action.
 

 A. The First Action as a source of subject matter jurisdiction
 

 Cello argues that the district court lacked jurisdiction because “[t]he only jurisdictional nexus ... presented on the face of Storey’s complaint ... stems solely from the First Action.”
 
 Cf. Rivet v. Regions Bank of Louisiana,
 
 522 U.S. 470, 478, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (holding that “claim preclusion by reasons of a prior federal judgment is a defensive plea that provides no basis for removal” or federal subject matter jurisdiction under the well-pleaded complaint rule);
 
 Peacock v. Thomas,
 
 516 U.S. 349, 355, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) (“[C]laims alleged to be factually interdependent with and, hence, ancillary to claims brought in an earlier federal lawsuit will not support federal jurisdiction over a subsequent lawsuit.”). While we do not take issue with this general principle, Cello’s argument is meritless because Storey’s complaint is premised on his federal right to bring a cause of action under 15 U.S.C. § 1114(2)(D)(v), which expressly provides: “A domain name registrant whose domain name has been suspended, disabled, or transferred ... may ... file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this Act.” Storey’s complaint thus has its own, independent basis for federal subject matter jurisdiction.
 
 See
 
 15 U.S.C. § 1121(a); 28 U.S.C. § 1331.
 

 B. Jurisdiction “under the UDRP”
 

 Labeling UDRP Paragraph 4(k) a “contractual forum selection clause,” Cello next argues that the Southern District of New York was not a permissible forum in which to challenge the UDRP award transferring Storey’s rights in “cello.com.” Insofar as Cello argues that the domain-name registrant’s agreement to submit to the “mandatory administrative proceedings” under UDRP Paragraph 4 limits the jurisdictions in which a domain-name registrant can bring a federal suit under § 1114(2)(D)(v), we disagree.
 

 Referring to the domain-name registrar, here NSI, as “we,” Paragraph 4(k) of the UDRP states the following:
 

 The mandatory administrative proceeding requirements set forth in
 
 Paragraph I
 
 shall not prevent either [the registrant] or the complainant from submitting the dispute to a court of competent jurisdiction for independent resolution .... If an Administrative Panel decides that [the registrant’s] domain name registration should be canceled or transferred, we will wait ten (10) business days ... after we are informed ... of the Administrative Panel’s decision before implementing that decision. We will then implement the decision unless we have received from [the registrant] during that ten (10) business day period official documentation ... that [the registrant has] commenced a lawsuit against the complainant in a jurisdiction to which the complainant has submitted under
 
 Paragraph S(b)(xiii)
 
 of the Rules of Procedure.... If we receive such documentation within the ten (10) business day period, we will not implement the Administrative Panel’s decision ....
 

 Cello argues that only the jurisdictions to which it, the complainant, has
 
 *380
 
 “submitted” are permissible jurisdictions for the Instant Action, and that the Southern District of New York is not one of them.
 
 [5]
 
 This argument, however, ignores the first sentence of Paragraph 4(k), which states that the existence of UDRP proceedings against Storey does not prevent him from seeking “independent resolution” of “the dispute” in “a court of competent jurisdiction.” The jurisdictional restrictions in UDRP Paragraph 4(k) thus address the limitations on the registrar’s obligations that arise in response to a lawsuit; they do not the affect jurisdictions in which the complainant may seek an “independent resolution” from the courts. Only if a domain-name registrant seeks to delay implementation of a UDRP panel’s decision is he or she obliged to commence his or her lawsuit against the complainant within the ten-day window and to bring it in a court to whose jurisdiction the complainant has submitted contractually. As the UDRP provides no definition for “court of competent jurisdiction” as a term of art, we give the term its plain meaning, namely a court that has jurisdiction to hear the claim brought before it. We see no reason why the Southern District of New York is not such a court.
 
 [6]
 

 II.
 
 Res Judicata
 

 Cello next argues that the district court erred in holding that the judgment in the First Action served as
 
 res judicata
 
 to establish Storey’s rights to the domain name “cello.com” in the Instant Action. “Under the doctrine of
 
 res judicata,
 
 or claim preclusion, ‘[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.’ ”
 
 [7]
 

 St. Pierre v. Dyer,
 
 208 F.3d 394, 399 (2d Cir.2000) (quoting
 
 Federated Dep’t Stores, Inc. v. Moitie,
 
 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981));
 
 see also Maharaj v. Bankamerica Corp.,
 
 128 F.3d 94, 97 (2d Cir.1997) (“[O]nce a final judgment has been entered on the
 
 *381
 
 merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning ‘the transaction, or series of connected transactions, out of which the [first] action arose.’ ” (quoting
 
 Restatement (Second) of Judgments
 
 § 24(1) (1982))).
 

 As set out above, Storey first asserted
 
 res judicata
 
 unsuccessfully as a defense to the UDRP Administrative Proceeding. In the Instant Action, Storey again asserts that the First Action has
 
 res judicata
 
 effect to establish his claim to the domain name. Although
 
 res judicata
 
 is normally applied as a defense to a claim, Storey’s
 
 res judicata
 
 argument here is part of his claim as a plaintiff: Storey seeks to establish that his use of “cello.com” is lawful visa-vis Cello because Cello is barred from asserting rights to “cello.com.”
 
 [8]
 

 We review
 
 de. novo
 
 the district court’s application of the principles of
 
 res judicata. See Boguslavsky v. S. Richmond Secs., Inc.,
 
 225 F.3d 127, 129-30 (2d Cir.2000).
 

 A. Effect of the UDRP Administrative Proceeding
 

 Preliminarily, Cello argues that Storey effectively waived his
 
 res judicata
 
 argument by failing to seek a stay of arbitration and by instead “allowing the [UDRP] arbitrators to reach a decision on the merits of his jurisdictional defense.”
 
 Cf. Halley Optical Corp. v. Jagar Int’l Marketing,
 
 752 F.Supp. 638, 639 (S.D.N.Y. 1990) (“Under 9 U.S.C. § 4, the proper procedure for a party to challenge whether it is subject to an arbitration agreement is to move the district court for a stay of arbitration.”). We disagree. UDRP Paragraph 4(k) provides for “independent resolution” of the parties’ dispute in the courts, and this provision is incompatible with Cello’s argument that Storey’s litigation strategy before the UDRP administrative panel has diminished Storey’s ability to present his case in the Instant Action. Unlike traditional binding arbitration proceedings, UDRP proceedings are structured specifically to permit the domain-name registrant two bites at the apple. The UDRP administrative proceedings are “mandatory,” but only in the sense that all registrants are obliged by virtue of the agreement to recognize the validity of a proceeding initiated by a third-party claimant. UDRP proceedings, however, need not be the exclusive remedy: an administrative proceeding does not preclude the registrant from vindicating his rights under the ACPA or trademark law in court.
 
 Cf. Parisi,
 
 139 F.Supp.2d at 751 (“Although the UDRP describes the process as ‘mandatory’ in the sense that a registrant’s refusal to participate may lead to an uncontested loss of the domain name, the process is not ‘mandatory’ in the sense that either disputant’s legal claims accrue only after a panel’s decision.”). We therefore hold that Sto-rey’s presentation of the
 
 res judicata
 
 defense to a UDRP administrative proceeding does not prevent Storey from raising
 
 *382
 
 the issue in this suit for relief under § 1114(2)(D)(v).
 

 For much the same reasons that we find that the UDRP panel’s resolution of the
 
 res judicata
 
 question has no bearing on our consideration of that issue on appeal, we believe that the district court erred in focusing its analysis on whether Cello was barred by
 
 res judicata
 
 from initiating the UDRP Administrative Proceeding.
 
 See Storey,
 
 182 F.Supp.2d at 361-62. This formulation of the
 
 res judicata
 
 issue misconstrues Storey’s action and the importance of the UDRP Administrative Proceeding.
 

 Storey’s complaint in the Instant Action alleges a cause of action pursuant to 15 U.S.C. § 1114(2)(D)(v), which states:
 

 A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this Act. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.
 

 In 15
 
 U.S.C. § 1114(2)(D)(ii)(II), the term “policy” is defined to refer to any “reasonable policy by [a] registrar ... prohibiting the registration of a domain name that is identical to, confusingly similar to, or dilutive of another’s mark.” Neither party contests that the UDRP is a policy within the scope of § 1114(2)(D)(ii)(II).
 

 Storey’s claim, therefore, seeks to demonstrate that his registration and use of “cello.com” “is not unlawful under this Act,” namely under the ACPA,
 
 [9]
 
 vis-a-vis Cello’s trademark rights in the mark “cello.” Although UDRP Paragraphs 4(a)-(c) establish the substantive elements that a complainant must prove to prevail in a UDRP administrative proceeding, the administrative panel’s consideration of these contractual criteria does not affect the district court’s determination of whether Sto-rey’s registration and use of “cello.com” is lawful under the ACPA.
 

 The ACPA provides an allegedly aggrieved trademark owner a cause of action similar to, yet distinct from, the threshold for an administrative remedy under UDRP Paragraphs 4(a)-(c). We agree with the First and Fourth Circuits that a claim brought by a domain name registrant under § 1114(2)(D)(v) seeks “a declaration of nonviolation of the ACPA,” not requiring (or permitting) review of the UDRP panel’s application of the UDRP’s cybersquatting standard, but instead “trump[ing] the panel’s finding of noncompliance.”
 
 Sallen,
 
 273 F.3d at 18, 27;
 
 accord Hawes v. Network Solutions, Inc.,
 
 337 F.3d 377, 386 (4th Cir.2003) (“[A]n action brought under § U14(2)(D)(v) on the heels of an administrative proceeding [under the UDRP]... is independent of, and involves neither appellate-like review of nor deference to, the underlying proceeding.”).
 
 [10]
 

 
 *383
 
 The decision issuing from the UDRP Administrative Proceeding is relevant, therefore, only insofar as it triggered Storey’s right to sue under § 1114(2)(D)(v).
 
 [11]
 

 See Barcelona.com,
 
 330 F.3d at 626 (noting that a UDRP panel decision “is relevant only to serve as the reason for [registrant’s] bringing an action under § 1114(2) (D)(v)”).
 

 B. Effect of the First Action
 

 Accordingly, the question to which we now turn is whether Cello is barred by the
 
 res judicata
 
 effect of the First Action from arguing that Storey’s registration is unlawful under the ACPA; if so, Storey is entitled to an order that the domain name be returned to him. If not, however, Storey is entitled to the relief he seeks only if Cello’s ACPA claim fails on its merits.
 

 Claims arising subsequent to a pri- or action need not, and often perhaps could not, have been brought in that prior action; accordingly, they are not barred by
 
 res judicata
 
 regardless of whether they are premised on facts representing a continuance of the same “course of conduct”:
 

 That both suits involved ‘essentially the same course of wrongful conduct’ is not decisive. Such a course of conduct ... may frequently give rise to more than a single cause of action.... While the [prior] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.
 

 Lawlor v. Nat’l Screen Serv. Corp.,
 
 349 U.S. 322, 327-28, 75 S.Ct. 865, 99 L.Ed. 1122 (1955);
 
 see also Maharaj,
 
 128 F.3d at 97 (“as a matter of logic, when the second action concerns a transaction occurring after the commencement of the prior litigation, claim preclusion does not generally come into play”);
 
 SEC v. First Jersey Securities, Inc.,
 
 101 F.3d 1450, 1464 (2d Cir.1996) (“If the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion.”).
 

 Application of this unremarkable principle is complicated by the at-times-difficult determination of what degree of conduct is necessary to give rise to a new “claim,” particularly where ongoing con
 
 *384
 
 duct is involved. Where the facts that have accumulated after the first action are enough on their own to sustain the second action, the new facts clearly constitute a new “claim,” and the second action is not barred by
 
 res judicata. See, e.g., Lawlor,
 
 349 U.S. at 328, 75 S.Ct. 865 (noting that “the conduct presently complained of was all subsequent to the [prior] judgment”);
 
 Interoceanica Corp. v. Sound Pilots, Inc.,
 
 107 F.3d 86, 90 (2d Cir.1997) (holding that ocean voyages occurring after an initial suit based on previous voyages were distinct transactions giving rise to a separate cause of action for breach of contract);
 
 First Jersey Secs., Inc.,
 
 101 F.3d at 1464 (“The claim that First Jersey defrauded customers in the sale, purchase and repurchase of certain securities in 1975-1979 is not the same as the claim that First Jersey defrauded customers in the sale, purchase, and repurchase of other securities in 1982-1985.”).
 

 Slightly more problematic are those situations involving claims under statutes that regulate ongoing conduct. In those circumstances, prior actions may not have
 
 res judicata
 
 effect on subsequent actions where the subsequent actions address new factual predicates, even when the legal issues raised in both actions are closely related.
 
 Cf. Cellar Door Prods., Inc. v. Kay,
 
 897 F.2d 1375, 1378 (6th Cir.1990) (concluding that “[e]ach time [an allegedly anticompetitive] arrangement precluded [plaintiff] from competitively bidding for an event, a cause of action may have accrued to” plaintiff);
 
 Harkins Amusement Enters., Inc. v. Harry Nace Co.,
 
 890 F.2d 181, 183 (9th Cir.1989) (noting that “[f]ail-ure to gain relief for one period of time does not mean that the plaintiffs will necessarily fail for a different period of time” and that “[t]he defendants by winning [the prior action] did not acquire immunity in perpetuity from the antitrust laws”);
 
 Spiegel v. Continental Illinois Nat’l Bank,
 
 790 F.2d 638, 644-46 (1986) (refusing to bar a second suit which, like the first suit, was based on allegations of mail fraud when two letters were mailed after the first action had been filed).
 

 Finally, however, claim preclusion may apply where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim. In
 
 Waldman v. Village of Kiryas Joel,
 
 207 F.3d 105, 112-14 (2d Cir.2000), for example, this Court recently held that a plaintiff did not allege sufficient post-first-action conduct to avoid claim preclusion in a second action, where the first action was between the same parties and had been dismissed with prejudice. In his first action, the plaintiff sued the village for discriminatory enforcement of the zoning code,
 
 id.
 
 at 107; in his second action, “he sought total dissolution of the village” under the Establishment Clause,
 
 id.
 
 at 108. The plaintiff included allegations of some conduct that occurred after the first action and argued that his second action was “really ‘based upon’ things that have happened since the filing of the prior suit[].”
 
 Id.
 
 at 112-13. Although recognizing that “legally significant acts occurring
 
 after
 
 the filing of a prior suit” will prevent the application of
 
 res judicata, id.
 
 at 113, we held that the facts post-dating the first action did “not create a ‘new’ cause of action that did not exist when the prior suits were brought,”
 
 id.
 
 at 112, because “[t]he new allegations made in the present complaint do not, either by themselves or to any degree not already demonstrated by the overlapping facts, establish the sort of pervasive and otherwise irremediable entanglement between church and state that would justify a drastic remedy like the dissolution of the Village,”
 
 id.
 
 at 113. Thus, we concluded, “it is simply not plausible to characterize Waldman’s claim as one based in any significant way
 
 *385
 
 upon the post-[first-action] facts.”
 
 Id.
 
 at 113.
 
 Cf. NLRB v. United Techs. Corp.,
 
 706 F.2d 1254, 1260 (2d Cir.1983) (concluding that
 
 res judicata
 
 turned in part on “whether facts essential to the second [action] were present in the first”).
 

 Applying these principles, it is clear that had Cello not alleged any facts subsequent to the First Action on which to premise its § 1125(d) claim, the
 
 res judicata
 
 issue could be quickly resolved in favor of Storey.
 
 [12]
 
 Cello, however, argues that its ACPA cybersquatting claim against Storey is premised at least in part on Storey’s “new act of cybersquatting” embodied in the September 25 Letter, and that
 
 res judicata
 
 does not apply because the letter was sent after final judgment in the First Action. The district court dismissed this argument by reasoning that “[t]he September 25th Letter was not an act of ‘cybersquatting,’ ” “Cello had already given up any claim to rights in the domain name in question,” and the Instant Action was “simply a reassertion by Storey of his rights to the domain name.’ ”
 
 Storey,
 
 182 F.Supp.2d at 363.
 

 In so holding, the district court erroneously conceived of the lawfulness of a domain-name registrant’s use of a domain name to be a permanent determination that, once made, cannot be disturbed.
 
 [13]
 
 Section 1125(d)(1)(B)(i)(VI) demonstrates, however, that Congress intended the cybersquatting statute to make rights to a domain-name registration contingent on ongoing conduct rather than to make them fixed at the time of registration. If another party has trademark rights in a mark that is similar to the domain name, the domain-name registrant must use the name without a “bad faith intent to profit,” § 1125(d)(l)(A)(i), to maintain its registration rights. Although many of the factors
 
 *386
 
 included in § 1125(d)(l)(B)(i)(I)-(IX), which provide a non-exhaustive list of nine factors to consider in arriving at a finding of fact concerning the registrant’s “bad faith intent to profit” from the trademark owner’s mark, call the court’s attention to facts as they existed at the time the domain name was registered, subsection (VI) focuses the court’s attention on the domain-name registrant’s ongoing use of the domain name:
 

 In determining whether a person has a bad faith intent ... a court may consider ... the person’s offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person’s prior conduct indicating a pattern of such conduct.
 

 § 1125(d)(1)(B)(i)(VI).
 

 The September 25 Letter, then, presents a fact that a court may consider in determining whether Storey has a “bad faith” intent to profit from Cello’s mark: the letter is a targeted offer to sell “cello.com” to the mark owner or a third party for financial gain. As this Court held in
 
 Waldman,
 
 however, the question is not merely whether Cello alleges some facts subsequent to the First Action that are relevant to its claim. Rather, the question presented is whether the September 25 Letter constitutes the basis for a new cause of action, and whether it is “plausible to characterize” Cello’s § 1125(d) implicit claim demonstrating the unlawfulness of Storey’s use of “cello.com” in the Instant Action “as one based in any significant way” on the September 25 Letter.
 
 Waldman,
 
 207 F.3d at 113. We hold that such a characterization is possible because Storey’s right to use “cello.com” was not permanently fixed by the dismissal of the First Action; instead, it is contingent on his ongoing legal use of that domain name. Thus, Cello may bring an ACPA cause of action based on the September 25 letter and is not barred by
 
 res judicata,
 
 even though the legal theory on which the new ACPA claim is based is similar to that on which the First Action was premised.
 
 [14]
 
 We emphasize, however, that we do not determine that the September 25 Letter alone is legally sufficient to establish a “bad faith intent to profit.”
 
 [15]
 
 This question must be addressed by the district court on remand.
 

 While our holding makes a prior judgment in favor of a domain-name registrant a less powerful tool to stave off subsequent
 
 *387
 
 suits by a trademark owner than if we held that
 
 res judicata
 
 barred Cello’s arguments in the Instant Action, we do not leave domain-name registrants without recourse to the tools of preclusion that lessen the burdens of successive litigation. In cases where the merits of the first action were actually litigated and resolved in the domain-name registrant’s favor,
 
 collateral estoppel
 
 may apply to bar relitigation of the confusion issue in § 1125(d)(1)(A)(ii), even if
 
 res judicata
 
 does not apply to bar the entire claim.
 
 Cf. United Techs. Corp.,
 
 706 F.2d at 1260-64 (holding that
 
 collateral estoppel
 
 barred subsequent suit even when
 
 res judicata
 
 did not apply). Moreover, we do not anticipate that our decision today will create substantial uncertainty for settling litigants, because even claims based on ongoing conduct ordinarily can be extinguished so long as the settlement agreement is clearly drafted.
 
 [16]
 

 III. Rule 11 Sanctions
 

 Under Fed.R.Civ.P. 11(b), whenever a signed pleading or “other paper” is submitted to the court, an attorney certifies:
 

 (1) [the paper] is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
 

 (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
 

 (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
 

 (4)the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
 

 “[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness,”
 
 Margo v. Weiss,
 
 213 F.3d 55, 65 (2d Cir.2000), and is not based on the subjective beliefs of the person making the statement.
 

 We review a district court’s imposition of Rule 11 sanctions for abuse of discretion.
 
 Schlaifer Nance & Co. v. Estate of Warhol,
 
 194 F.3d 323, 333 (2d Cir.1999). This deferential standard is applicable to the review of Rule 11 sanctions because, as in many other contexts, the district court is “[f]amiliar with the issues and litigants” and is thus “better situated than the court of appeals to marshal the pertinent facts and apply [a] fact-dependent legal standard.”
 
 Cooter & Gell v. Hartmarx Corp.,
 
 496 U.S. 384, 402, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). When reviewing Rule 11 sanctions, however, “we nevertheless need to ensure that any [sanctions] decision is made with restraint.”
 
 Schlaifer Nance & Co.,
 
 194 F.3d at 334;
 
 cf. Mackler Prods., Inc. v. Cohen,
 
 146 F.3d 126, 128 (2d Cir.1998) (noting that one “troublesome aspect of a trial court’s power to impose sanctions ... is that the trial court may act as accuser, fact finder and sentencing judge”). “A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous
 
 *388
 
 assessment of the evidence.”
 
 Cooter & Gell,
 
 496 U.S. at 405, 110 S.Ct. 2447;
 
 see also Schlaifer Nance & Co.,
 
 194 F.3d at 333.
 

 The district court held that Cello and the Sanctioned Counsel violated Rule 11 in three distinct ways: (A) by making unsupported factual contentions and unwarranted denials of factual contentions in violation of Rule 11(b)(3) and (4); (B) by putting forward objectively unreasonable legal arguments and defenses in violation of Rule 11(b)(2);
 
 [17]
 
 and (C) by submitting its answer for an improper purpose in violation of Rule 11(b)(4). We consider each of the three categories of sanctions in turn, and hold that the district court abused its discretion in all of them.
 
 [18]
 

 A. Factual contentions and denials
 

 With regard to factual contentions, “sanctions may not be imposed unless a particular allegation is utterly lacking in support.”
 
 O’Brien v. Alexander,
 
 101 F.3d 1479, 1489 (2d Cir.1996) (interpreting the 1993 amendment to Rule 11(b)).
 

 The district court specifically identified eight factual contentions or denials that lacked evidentiary support or that were not warranted on the evidence. Here, we consider them in groups, because, in some instances, the isolation of fragmentary contentions creates the appearance of an unwarranted contention.
 
 Cf. Schlaifer Nance & Co.,
 
 194 F.3d at 337 (reviewing sanctions imposed under the court’s inherent power and under 28 U.S.C. § 1927 and noting that “the facts in their totality belie the conclusion that [plaintiffs] claim lacked a colorable basis”). Although some of the identified factual contentions are more suspect than others, we hold that the district court abused its discretion in imposing sanctions based on these contentions because they are not “utterly lacking in support.”
 
 O’Brien,
 
 101 F.3d at 1489.
 

 1. Reliance on the September 25 Letter in the UDRP proceedings
 

 The district court sanctioned Cello for its representation that “it filed the arbitration proceedings because Storey engaged in a ‘new act of cybersquatting.’ ”
 
 Storey,
 
 182 F.Supp.2d at 366. Although, as discussed above, the
 
 legal
 
 contention in this statement has more validity than the district court recognized, the district court was understandably troubled by the
 
 factual
 
 contention in this statement. In a letter of April 13, 2001 submitted to the district court, counsel for Cello stated that the September 25 Letter “was the basis for the arbitration,” yet neither Cello’s answer nor Cello’s UDRP complaint mentions it. In its motion for summary judgment, Cello’s counsel likewise contended that “Cello commence[d] its arbitration
 
 predicated
 
 upon” the September 25 Letter.
 
 [19]
 
 (Def.’s Mem. Supp. Summ. J. at 13) (emphasis added). These representations communicate more than “the subjective reason for the commencement of the arbitration,” as
 
 *389
 
 Cello now attempts to construe the statements on appeal; they incorrectly state that the September 25 Letter was a relevant fact in the UDRP Administrative Proceeding.
 

 Although these statements are highly suspect, they cannot serve as the basis of the sanctions imposed by the district court: Rule 11 contains a notice requirement, and Cello did not receive proper notice of the impending sanctions with regard to these statements. The text of Rule 11 requires that a party’s motion initiating the sanctions process “shall describe the specific conduct alleged to violate subdivision (b).” Fed.R.Civ.P. 11(c)(1)(A). Alluding to the due process rights of any person potentially subject to any kind of sanctions, this Circuit has explained that:
 

 At a minimum, the notice requirement mandates that the subject of a [Rule 11] sanctions motion be informed of: ...
 
 [inter alia
 
 ] the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense. Indeed, only conduct explicitly referred to in the instrument providing notice is sanctionable.
 

 Schlaifer Nance & Co.,
 
 194 F.3d at 334 (internal citation omitted). This notice requirement permits the subjects of sanctions motions to confront their accuser and rebut the charges leveled against them in a pointed fashion. Moreover, when Rule 11 sanctions are initiated by the motion of a party, it gives the subject the opportunity to withdraw the potentially offending statements before the sanctions motion is officially filed.
 
 See
 
 Fed.R.Civ.P. Rule 11(c)(1)(A) (providing a “safe harbor” by requiring the motion for sanctions to be served twenty-one days before it can be filed with the court)..
 

 Storey’s Memorandum in Support of Plaintiffs Motion for Sanctions, the “instrument providing notice” here, references only “a frivolous answer denying the material allegations of the complaint” as the “predicate for the imposition of sanctions under Rule 11.” Storey’s sanctions motion makes no direct reference to the September 25 Letter, and, as the district court itself noted, there is no mention of the September 25 Letter in Cello’s answer.
 
 [20]
 

 See Storey,
 
 182 F.Supp.2d at 359. Accordingly, we conclude that Cello did not receive the requisite notice that sanctions might be imposed because of its contention that the September 25 Letter was the factual predicate of the UDRP Administrative Proceeding.
 

 2. The scope of the First Action
 

 The district court also sanctioned Cello for its representation in its motion for summary judgment that the First Action addressed only the prior use of “eel-lo.com”; the district court stated that this representation was false because Cello sought prospective relief.
 
 Storey,
 
 182 F.Supp.2d at 367. Again, however, because this contention was not made in the answer, Rule ll’s notice requirements make it ineligible as a basis for sanctions.
 

 3. Contentions concerning the dismissal order
 

 The district court doubly sanctioned Cello for the following contention in its an
 
 *390
 
 swer concerning the August 15, 2000 order dismissing the First Action: “The Order entered by the Court is a matter of public record. The Order was entered pursuant to a settlement agreement, not as a determination on the merits and was without prejudice to the rights of the Defendants herein to assert ownership of the disputed domain name.”
 
 Storey,
 
 182 F.Supp.2d at 366-67.
 

 First, the district court noted that Cello itself argued the opposite when, in its motion for summary judgment, it stated that “the parties never agreed upon the terms of a settlement.”
 
 Id.
 
 at 366. On the same page of the summary judgment motion, however, Cello qualified this statement with the following: “The only agreement, therefore, was to dismiss the First Action which addressed only the prior use of the name.” (Def. Mem. Supp. Summ. J. at 3). Furthermore, in the Virginia court proceedings, the parties concurred that at the end of the First Action they had “reached an agreement that [the action] was not going to be pursued any further at that point.” Although Cello had sufficient notice to be sanctioned for this statement, its contention that the First Action was dismissed pursuant to an agreement, as tenuous as it is, is not “utterly lacking in support.”
 
 O’Brien,
 
 101 F.3d at 1489.
 

 Second, the district court considered that the contention was factually false because the text of the August 15 order contains the words “with prejudice” and the answer states that the same order was “without prejudice.” Here, the district court confused a factual argument with a legal argument. Cello admitted the textual contents of the order as “a matter of public record.” As the discussion of the merits above demonstrates, Cello’s argument that the judgment in the First Action “was without prejudice to the rights of the Defendants herein to assert ownership of the disputed domain name” is, in a limited fashion, legally accurate. Cello’s statement is nothing more than a reformulation of the principle that
 
 res judicata
 
 does not apply to bar the entirety of the current action. Accordingly, this statement is not sanctionable.
 

 4. Objection to the jurisdiction of the UDRP panel
 

 The district court held that Cello’s denial in its answer of Storey’s assertion that Storey “objected to the jurisdiction of the arbitral panel” was unwarranted on the evidence because Storey’s response to Cello’s UDRP complaint raised the
 
 res judica-ta
 
 defense as its first argument.
 
 Storey,
 
 182 F.Supp.2d at 366. Cello, however, was again making a legal argument, rather than a factual argument concerning the contents of Storey’s response papers in the UDRP Administrative Proceeding. Cello was arguing, as it does on appeal in its waiver argument, that Storey’s decision to submit papers to the UDRP panel must affect the Instant Action because Storey chose to participate in the proceedings rather than to contest the legal authority of the panel to render a decision. Furthermore, the next sentence in Cello’s answer admits precisely the fact the district court believed that Cello was falsely denying: “It is admitted that the [Storey] relied upon the August 15, 2000 Order as a part of his defense” in the UDRP Administrative Proceeding.
 

 5.
 
 Nature of the UDRP proceedings
 

 The district court doubly sanctioned the following denial in Cello’s answer: “It is denied that the arbitral decision was erroneous. It is denied that an actual case or controversy regarding ownership of the domain name ‘cello.com’ exists between the parties because the arbitral award is final and binding.” The district court concluded
 
 *391
 
 that Cello’s denial of an “actual case or controversy” was not warranted by the evidence because Cello itself brought the action in Virginia, indicating it believed that a dispute between the parties existed; the district court also found that Cello’s contention that the arbitration award was “final and binding” was factually false.
 
 Storey,
 
 182 F.Supp.2d at 366-67.
 

 The sanctioned statement is actually a single, non-frivolous legal argument. The contention that there is no “actual case or controversy” between the parties does not necessarily imply that there is no dispute between two parties. Rather, the denial in Cello’s answer that there was “an actual case or controversy regarding the ownership of the domain name ‘cello.com’ ” can be read as a short-hand notation for the argument that the district court lacked jurisdiction to review or supersede the UDRP panel’s decision on the merits. We read Cello’s characterization of the UDRP panel decision as “final and binding” as making the same legal point.
 

 6. Voluntary participation in the UDRP proceedings
 

 Finally, the district court sanctioned Cello for its “assertion that Storey ‘voluntarily participated’ in the arbitration proceedings to such an extent that he should be deemed to have waived his
 
 res judicata
 
 defense.”
 
 Storey,
 
 182 F.Supp.2d at 367. The district court does not identify the particular pleading or other paper from which it culled this assertion, but we find no mention of Storey’s “voluntary participation” in the UDRP proceedings in Cello’s answer. Accordingly, to the extent Cello made this representation, we hold that it had insufficient notice as to sanctions concerning this contention. Furthermore, to the extent that this statement is a factual assertion, Storey participated in the UDRP proceedings by submitting an answer, and no allegations of coercion have been made.
 

 B. Legal claims and defenses
 

 Merely incorrect legal statements are not sanctionable under Rule 11(b)(2). Rather sanctionable “legal contentions” must not be “warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.” Fed.R.Civ.P. 11(b)(2).
 

 The district court identified four arguments made by Cello that it believed had no reasonable basis in existing law or fact.
 
 Storey,
 
 182 F.Supp.2d at 367-69. It concluded that these assertions could not represent nonfrivolous arguments for the establishment of new law because “the legal principles at issue are well settled” and “the facts simply do not support Cello’s legal contentions.”
 
 Id.
 
 at 367. We hold that the district court abused its discretion in labeling Cello’s arguments unwarranted. Although all of Cello’s arguments may not ultimately have prevailed, none are patently contrary to existing law, especially as it existed at the time the papers were signed,
 
 see MacDraw, Inc. v. CIT Group Equip. Fin., Inc.,
 
 73 F.3d 1253, 1260 (2d Cir.1996) (examining the reasonableness of a statement under Rule 11 at the time that it was submitted), nor are they so lacking in merit as to amount to a frivolous argument for the extension of existing law.
 

 1. Storey’s Waiver of his
 
 res judi-cata
 
 argument
 

 As mentioned above, the district court sanctioned Cello for its “assertion that Storey ‘voluntarily participated’ in the arbitration proceedings to such an extent that he should be deemed to have waived his
 
 res judicata
 
 defense.”
 
 Storey,
 
 182 F.Supp.2d at 367. Notwithstanding that this argument was not in Cello’s answer, and that
 
 *392
 
 Cello therefore did not receive proper notice concerning potential sanctions based on this argument, this argument is closely related to other arguments that have been actively litigated in the federal courts over the last two years. Cello argued that because the UDRP proceedings were akin to traditional arbitration proceedings, Storey’s decision to file a response in the proceeding, rather than immediately challenge the authority of the arbitration panel, affected Storey’s right to argue his case in the federal courts.
 
 Cf. Halley Optical Corp.,
 
 752 F.Supp. at 639 (“Under 9 U.S.C. § 4, the proper procedure for a party to challenge whether it is subject to an arbitration agreement is to move the district court for a stay of arbitration.”) (citations omitted). Since Cello filed its answer, a district court issued an opinion addressing at length whether the Federal Arbitration Act (“FAA”) restrictions on judicial review of arbitration awards were applicable to UDRP Paragraph 4 proceedings,
 
 see Parisi,
 
 139 F.Supp.2d at 749-53, and the Third Circuit reversed a district court which had held that the FAA did apply to judicial review of UDRP proceedings,
 
 see Dluhos,
 
 321 F.3d at 369-73. Although we concluded above that Cello’s arguments do not comport with the UDRP’s textual provision for an “independent resolution” of the dispute, the legal principles structuring review of a UDRP panel decision, and their relationship to the law of binding arbitration, were sufficiently unsettled at the time that Cello filed its answer so as to render the district court’s decision to sanction the argument an abuse of discretion. This conclusion is further supported by district court’s misunderstanding of the relationship between a UDRP proceeding and a registrant’s cause of action under § 1114(2)(D)(v) insofar as it held that
 
 res judicata
 
 barred Cello from submitting its complaint to a UDRP panel.
 

 2. The UDRP proceedings were “final and binding”
 

 The district court sanctioned Cello for arguing in its answer that the UDRP panel decision was “final and binding.” The same argument just discussed applies here: Cello was arguing that some principles of arbitration law applied to the court’s review of a UDRP decision, and such arguments were, especially at the time the answer was filed, not unwarranted given the infancy of the UDRP system and the lack of clear, binding precedent on the issue.
 

 3. Laches and “contractual limitations of actions”
 

 The district court sanctioned Cello because it believed that there was no good faith basis for the answer’s assertion of an affirmative defense based on “laches” and “contractual limitations of actions.”
 
 See Storey,
 
 182 F.Supp.2d at 367-68. As discussed above, the sparsity of cases interpreting the UDRP at the time Cello filed its answer makes it difficult to label the simple reservation of an affirmative defense as frivolous.
 

 Additionally, the district court may have misunderstood the complexity of Cello’s argument. The district court characterizes Cello’s laches argument as unreasonable because documentation from NSI clearly shows that the UDRP Paragraph 4(k) deadline was January 11, 2001, and Storey filed the Instant Action before the deadline on January 10, 2001. Cello’s argument, however, was not just that Storey failed to file in time but that Storey failed to do so in a proper forum. The argument that failing to comply with the UDRP Paragraph 4(k) process affected Storey’s rights in the Instant Action is weak but it is not objectively unreasonable, again, especially given the lack of judicial interpretation of the UDRP.
 

 
 *393
 

 4. Jurisdiction and venue defenses
 

 The district court sanctioned Cello for asserting lack of personal jurisdiction and improper venue as defenses. Because these arguments were not properly raised on appeal, we did not reach them in our review of Cello’s jurisdictional objections, but we believe that they are not frivolous. The district court premised its belief that no reasonable basis existed for these defenses on Cello’s contacts with New York as a plaintiff in the First Action and on the facts underlying the first action.
 
 See Storey,
 
 182 F.Supp.2d at 368. Whether a litigant’s involvement as a plaintiff in a prior action, or the facts introduced in a prior action, can serve as the basis of personal jurisdiction over that litigant when he is a defendant in a subsequent action, in which the plaintiffs case relies on the
 
 res judicata
 
 effect of the prior action, is a novel issue. We need not resolve it at this time, however, because it is enough for our purposes here to say that the argument is at least non-frivolous.
 

 C. Improper Purpose
 

 Finally, the district court concluded that “Cello acted to harass Storey and to cause both delay and needless increase in the cost of litigation.”
 
 Storey,
 
 182 F.Supp.2d at 369. Although the district court’s perception, based on its personal experience with both the First Action and the Instant Action, that “Cello, with substantially greater resources than Storey, sought to wear Storey down,”
 
 id.,
 
 may be valid, the district court’s conclusion of improper purpose is also clearly predicated on its earlier determinations that Cello’s answer was riddled with sanctionable contentions and arguments.
 
 See id.
 
 (“The record includes, as reviewed above, multiple instances of misleading statements and omissions and the assertion of baseless arguments and defenses.”). Therefore, because we hold that the district court abused its discretion in its determinations under Rule 11(b)(2)-(4), we arrive at the same conclusion with respect to the district court’s sanctions under Rule 11(b)(1). Without objectively unreasonable statements, economic disparity and a greater litigiousness do not alone amount to improper purpose.
 

 CONCLUSION
 

 For the reasons given above, we hold that (1) there is subject matter jurisdiction over Storey’s claim against Cello under § 1114(2)(D)(v); (2) the Southern District of New York was an appropriate venue for Storey’s claim; (3) Storey did not waive his
 
 res judicata
 
 defense by asserting that defense to the UDRP arbitration panel; (4) the district court erred in focusing on whether
 
 res judicata
 
 barred Cello from bringing the UDRP Arbitration Proceeding; and (5) to the extent the September 25, 2001 letter or other conduct post-dating the First Action amounts to a new claim under the ACPA that did not exist when the First Action was brought, it is not barred by
 
 res judicata
 
 and summary judgment, therefore, was improperly granted on this ground.
 

 Accordingly, we Vaoate the judgment of the district court and Remand for further proceedings under § 1114(2)(D)(v) to determine whether Storey’s registration and use of the domain name “cello.com” is lawful under the ACPA or whether Cello’s allegations of conduct subsequent to the First Action, the only transactions on which Cello may premise an ACPA claim not barred by
 
 res judicata,
 
 demonstrate that Storey’s registration and use of “cello.com” are unlawful.
 

 We also Vacate the Rule 11 sanctions.
 

 [1]
 

 . A "domain name” is an “alphanumeric designation” that is "part of an electronic address on the Internet.” 15 U.S.C. § 1127. Internet users seeking to access particular information on the World Wide Web may use a domain name “much like a telephone number ... to reach a particular Web site.”
 
 Sallen v. Corinthians Licenciamentos LTDA,
 
 273 F.3d 14, 18 (1st Cir.2001). Rights to exclusive use of domain names have value because domain names may provide an intuitive method to for Internet users to access relevant information.
 

 [2]
 

 . “NSI is one of several domain-name registrars accredited by the Internet Corporation for Assigned Names and Numbers ('ICANN'), a not-for profit corporation that administers the domain-name system pursuant to a Memorandum of Understanding with the United States Department of Commerce.”
 
 Sallen,
 
 273 F.3d at 20. "Registrars assign specific [domain names] to 'registrants,' [and] ensure
 
 that each
 
 registered [domain
 
 name] is
 
 unique ....”
 
 Parisi v. Netlearning, Inc.,
 
 139 F.Supp.2d 745, 746 n. 3 (E.D.Va.2001).
 

 [3]
 

 . "[R]egistrars have agreed, or have been required by ICANN, to incorporate the UDRP into registration agreements ... and registrants must accept the UDRP’s terms in order to register a domain name.”
 
 Sallen,
 
 273 F.3d at 20 (citation omitted). The agreement be
 
 *376
 
 tween Storey and NSI states that Storey consents to application of the "dispute policy in effect at the time of the dispute.” In October, 2000, that policy was the UDRP as approved by the ICANN on October 24, 1999. Storey does not contest that he is bound by the terms of this version of the UDRP.
 

 [4]
 

 . NSI also informed Storey that the panel decision would be implemented unless an action was brought in Chatsworth, California or Fairfax County, Virginia.
 

 [5]
 

 . Paragraph 4(k) notes that “[i]n general, [the] jurisdiction [to which the complainant has submitted] is either the location of [the registrar’s] principal office or of [the registrant’s] address." Cello identifies these jurisdictions as Fairfax County, Virginia, the location of the principal office of NSI,
 
 and
 
 Chatsworth, California, the location of Sto-rey's residence as listed in NSI's Whois database. Although a question may exist as to whether Cello has "submitted” to jurisdiction in both these jurisdictions, Cello clearly has not "submitted” to jurisdiction in New York.
 

 [6]
 

 . Cello also argues that the district court lacked
 
 in personam
 
 jurisdiction, but it does so for the first time on appeal in its reply brief. In its answer, Cello objected to personal jurisdiction and venue based on Cello Holding’s lack of contacts with New York, but Cello did not raise this argument in its summary judgment briefing. More importantly, Cello did not raise a personal jurisdiction argument in its initial brief before this Court. Although Cello challenged the “jurisdictional nexus to the Southern District of New York presented on the face of Storey's complaint,” it did so only in the course of its argument on subject matter jurisdiction and the well-pleaded complaint rule, a doctrine specific to subject matter jurisdiction. Cello’s brief mentions neither "personal” nor
 
 "in person-am "
 
 jurisdiction, and it cites no case law addressing the contacts to New York State necessary to establish personal jurisdiction. We therefore conclude that Cello has abandoned its lack of personal jurisdiction defense.
 
 See
 
 Fed. R.App. P. 28(a)(9);
 
 LoSacco v. City of Middletown,
 
 71 F.3d 88, 92-93 (2d Cir.1995) (holding that an issue is abandoned where not raised in appellate brief).
 

 [7]
 

 . Although this formulation of the doctrine of
 
 res judicata
 
 is frequently quoted in this Circuit, it is potentially misleading insofar as its reference to "issues” potentially confuses
 
 res judicata
 
 with the related doctrine of
 
 collateral estoppel. Res judicata
 
 bars the relitigation of claims or causes of action that were or could have been raised in a prior action.
 

 [8]
 

 . To establish that Storey's registration is unlawful under the ACPA, Cello would bring a claim under 15 U.S.C. § 1125(d), entitled ‘‘Cyberpiracy prevention,” which provides a trademark owner a cause of action against a domain-name registrant who has acquired rights in a domain name to free ride on the strength of the trademark. Section 1125(d)(1)(A) lists its basic elements:
 

 A person shall be liable in a civil action by the owner of a mark ... if, without regard to the goods or services of the parties, that person -
 

 (i) has a bad faith intent to profit from that mark ...; and
 

 (ii) registers, traffics in, or uses a domain name that — (I) in the case of a [distinctive] mark ... is identical or confusingly similar to that mark; [or] (II) in the case of a famous mark ... is identical or confusingly similar to or dilutive of that mark ....
 

 [9]
 

 . Other Circuits that have addressed the issue have diverged on whether the term "Act” refers to the ACPA in particular or to the Lanham Act in general.
 
 Compare Sallen,
 
 273 F.3d at 18 (describing § 1114(2)(D)(v) as a suit seeking “a declaration of nonviolation of the ACPA”),
 
 with Barcelona.com, Inc. v. Ex-celentisimo Ayuntamiento De Barcelona,
 
 330 F.3d 617, 627-28 & n. 2 (4th Cir.2003) (defining "this Act” as the Trademark Act as codified in Chapter 22 of Title 15). Because our holding would be identical regardless of our choice, as the Lanham Act includes the ACPA, we assume but do not decide that “this Act” refers to the ACPA.
 

 [10]
 

 . We are aware that some courts have intimated that a § 1114(2)(D)(v) claim involves "judicial review” of the UDRP panel decision.
 
 See Dluhos v. Strasberg,
 
 321 F.3d 365, 373 (3d
 
 *383
 
 Cir.2003) (concluding that the Federal Arbitration Act does not apply to "judicial review” of UDRP panel decisions under § 1114(2)(D)(v));
 
 Parisi,
 
 139 F.Supp.2d at 753 (same);
 
 cf. id.
 
 at 752 (“[l]t is clear that ICANN intended to ... ensur[e] a ‘clear mechanism' for 'seeking judicial review of a decision of an administrative panel canceling or transferring the domain name.' ” (quoting ICANN,
 
 Staff Report on Implementation Documents for the Uniform Dispute Resolution Policy
 
 (September 29, 1999),
 
 available at
 
 http:// www.icann.org/udrp/staff-report-29sept99.-htm)).
 

 [11]
 

 . The text of the statute could be read to provide Storey with a cause of action only after the domain name has been transferred.
 
 See
 
 15 U.S.C. § 1114(2)(D)(v) (creating a cause of action where the "domain name has been suspended, disabled, or transferred”). We agree, however, with the First and Fourth Circuits that § 1114(2)(D)(v) encompasses situations in which a UDRP panel has ruled against a domain name and has ordered transfer or deactivation, but in which the order has not yet been implemented because of the Paragraph 4(k) waiting period.
 
 See Barcelona.com,
 
 330 F.3d at 627 (noting that a "suit for declaratory judgment and injunctive relief under § 1114(2)(D)(v) appears to be precisely the mechanism designed by Congress to empower a party whose domain name is subject to a transfer order ... to prevent the order from being implemented");
 
 Sallen,
 
 273 F.3d at 25 n. 11 (holding that a suit may be brought under § 1114(2)(D)(v) prior to transfer because a transfer order from a UDRP panel makes transfer of the domain name "inevitable unless a court action is filed”).
 

 [12]
 

 . We reject Cello’s contention that
 
 res judi-cata
 
 cannot apply because the dismissal with prejudice of the First Action does not constitute a judgment on the merits. Cello bases this argument on its allegations that the parties only agreed to discontinue the litigation and that it intended to obtain a dismissal without prejudice. Cello, however, received the thirty-day order and was on notice of the impending dismissal with prejudice; counsel’s "inadvertent” error (if it was error) to allow a judgment with prejudice to be entered does not prevent that judgment from being "on the merits.”
 
 See Samuels v. Northern Telecom, Inc.,
 
 942 F.2d 834, 836-37 (2d Cir.1991) (holding that counsel’s "inadvertent or inartful” inclusion of a premature Title VII claim in a complaint and his consent to a dismissal with prejudice barred plaintiff’s subsequent attempt to bring the Title VII claim). Furthermore, according to the district court, any alleged misstatement leading to the thirty-day order came from Cello’s counsel.
 
 See Storey,
 
 182 F.Supp.2d at 362.
 

 [13]
 

 . In other words, the district court treated a registrant's right to use a domain name as akin to a property interest, fixed by events that occurred at a specific point in the past, and shielded from subsequent attack by
 
 res judicata. See Nevada v. United States,
 
 463 U.S. 110, 129 n. 10, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) ("The policies advanced by the doctrine of
 
 res judicata
 
 perhaps are at their zenith in cases concerning real property, land and water.”);
 
 Arizona v. California,
 
 460 U.S. 605, 620, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (“Our reports are replete with reaffirmations that questions affecting titles to land, once decided should no longer be considered open.”). Such an assumption is unsurprising given the pervasive analogies to real property in the "cybersquatting” language used to describe disputes over the "ownership” of domain names. Such an assumption may also have resulted from the district court's focus on the confusion element in § 1125(d)(1)(A)(ii) to the exclusion of the bad-faith element in § 1125(d)(1)(A)(i).
 
 See Storey,
 
 182 F.Supp.2d at 362 ("The relief Cello sought in the arbitration proceeding was precisely the relief Cello had sought in the First Action' — transfer of the registration to the domain name 'cello.com' from Storey to Cello— for precisely the same reasons — the alleged confusion between Cello’s mark 'Cello’ and ‘cello.com.’ ”).
 

 [14]
 

 . We acknowledge that the announcement of what constitutes a legally sufficient predicate for a cybersquatting claim is difficult due to the relative infancy of the statutoiy scheme at issue. Whether conduct relevant to § 1125(d)(l)(B)(i)(VI) can alone sustain a reasonable inference of "bad faith intent to profit" from a mark remains uncharted territory under the ACPA. If, in the course of developing case law on the "bad faith” element of a cybersquatting claim, this Court were to conclude that intent at registration was the predominant factor, our
 
 res judicata
 
 holding might warrant revisiting. Without a claim argued on the merits below and directly presenting this issue, however, we cannot at the present time state that attempts to sell a domain name for financial gain without engaging in a bona fide offering of goods are insufficient to permit a fact-finder to infer a "bad faith intent to profit.”
 

 [15]
 

 . Likewise, we do not reach the merits of Storey's defenses to an allegation of "bad faith intent to profit” from Cello's mark. For example, Storey argued in the UDRP proceeding that it had no "bad faith intent to profit” from Cello because twenty other federal registrations incorporating "cello,” Cello has no greater interest in “cello.com” than any of these other trademark rights-holders, and Storey had no intent to profit from Cello in particular.
 

 [16]
 

 . While we recognize that the district court believed — apparently based on Cello's representations — that a settlement agreement had been reached, and entered its 30 day order accordingly, the absence of an agreement among the parties requires us to rely on
 
 res judicata
 
 alone, which cannot bar Cello’s new ACPA cause of action to the extent it is based on conduct that occurred after the First Action.
 

 [17]
 

 . The district court recognized that Cello could not be subject to monetary sanctions for a violation of Rule 11(b)(2).
 
 See
 
 Fed.R.Civ.P. 11(c)(2)(A) & Advisory Comm. Notes to 1993 Amendments.
 

 [18]
 

 . Because we vacate all sanctions, we also vacate the district court’s imposition of attorney’s fees.
 

 [19]
 

 . Because essentially the same allegation is contained in Cello’s motion for summary judgment, we do not reach the issue whether the April 13 letter qualifies as an "other paper” under Rule 11.
 
 Cf. In re Highgate Equities, Ltd..,
 
 279 F.3d 148, 153 (2d Cir.2002) (noting that "[c]ourts have been properly reluctant to characterize a letter generally as an ‘other paper’ on weighing Rule 11 sanctions” (quoting
 
 Legault v. Zambarano,
 
 105 F.3d 24, 27 (1st Cir.1997))).
 

 [20]
 

 . Storey’s reply memorandum in support of its motion for sanctions notes that Cello “compounded [its] sanctionable misconduct” in opposing Storey's motion for summary judgment and filing its own cross-motion. Statements first identified in a reply memorandum in support of sanctions, however, usually will not provide the subject of the sanctions motion with sufficient notice, as the subject no longer has the opportunity either to respond or to timely withdraw the statements before the sanctions motion is filed.