**PANNONIA FARMS, INC.,**
**Plaintiff–Appellant,**

v.

**USA CABLE, Defendant–Appellee.**

**Docket No. 04–4705–CV.**

United States Court of Appeals,
Second Circuit.

Argued May 13, 2005.

Decided Oct. 17, 2005.

Bernard C. Dietz, Washington, D.C. (John P. DeMaio, Law Offices of John DeMaio, New York, New York, of counsel), for Plaintiff–Appellant.

Philip R. Hoffman, New York, New York (Pryor Cashman Sherman & Flynn LLP, New York, New York, of counsel), for Defendant–Appellee.

Before: FEINBERG, CARDAMONE, and SACK, Circuit Judges.

PER CURIAM.

Plaintiff Pannonia Farms, Inc. (Pannonia or plaintiff) appeals from an order dated June 10, 2004 of the United States District Court for the Southern District of New York (Buchwald, J.) granting defendant USA Cable's (USA Cable or defendant) motion for summary judgment, denying Pannonia's cross-motion for summary judgment, and granting USA Cable's motion for attorney's fees and costs under 17 U.S.C. § 505 and for Rule 11 sanctions. Pannonia also appeals the August 10, 2004 order of the district court denying its motion for reconsideration.

The appeal presently before us has its genesis in a TV movie called "Case of Evil" broadcast over USA Cable's television network. The principal character in the movie is a young Sherlock Holmes who meets Dr. Watson for the first time and the two of them solve a crime. USA Cable acknowledges that the film is based on characters created by the British author Sir Arthur Conan Doyle.

Pannonia's counsel wrote defendant before the movie aired, claiming to own the copyrights in Sir Arthur's writings and the common law trademarks in the characters of Holmes and Watson and stating that USA Cable could not broadcast the proposed movie unless it first paid plaintiff a fee. Defendant rejected this demand and aired the movie. Plaintiff sued USA Cable by filing a complaint on October 3, 2003 alleging copyright and common law trademark infringement and dilution/unfair competition. Plaintiff claimed ownership of these rights through a chain of title from the Conan Doyle Estate to a 1986 transfer of Sir Arthur's writings from a company called Star Container Establishment (Star) to Pannonia.

On November 14, 2003, six weeks after the complaint was filed, USA Cable's attorney wrote to Pannonia's attorney stating that under Rule 11 the complaint should be withdrawn because it was harassing, lacked evidentiary support, and was not supported by existing law or non-frivolous argument. On December 4, 2003, USA Cable obtained permission from the district court to move simultaneously for summary judgment, attorney's fees, and sanctions under Fed.R.Civ.P. 11. Defendant filed such a motion on December 18, 2003. In response, Pannonia cross-moved for summary judgment on January 16, 2004. On June 7, 2004 the district court granted USA Cable summary judgment, it held that Pannonia and its attorneys were jointly liable to USA Cable for its attorney's fees and costs under 17 U.S.C. § 505, and sanctioned them under Rule 11. The amount of those fees and costs were to be set after this appeal was resolved. Subsequently, the district court denied Pannonia's motion for reconsideration of its rulings.

## DISCUSSION

### I Award of Summary Judgment

Pannonia first argues that the district court improperly granted summary judg-

ment in favor of USA Cable. We review a grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party to determine whether any genuine issues of material fact exist. *Zurich Am. Ins. Co. v. ABM Indus., Inc.*, 397 F.3d 158, 164 (2d Cir.2005). We affirm the grant of summary judgment to USA Cable substantially based on the reasoning expressed in two extensive opinions of the district court. *See Pannonia Farms, Inc. v. USA Cable (Pannonia I )*, 2004 WL 1276842, at *5–*6 (S.D.N.Y. June 8, 2004); *Pannonia Farms, Inc. v. USA Cable (Pannonia II )*, 2004 WL 1794504, at *2–*4 (S.D.N.Y. Aug.10, 2004) (denial of motion for reconsideration). We hold that the district court properly denied Pannonia's motion for summary judgment because plaintiff did not own intellectual property rights in the works of Sir Arthur and therefore lacked standing to bring suit. Pannonia's claim that it obtained ownership in the intellectual property rights of Sir Arthur's work due to a purported 1986 transfer from Star is a right that, if it existed at all, was extinguished by a 1990 settlement agreement entered into pursuant to a state court decree in *Reynolds v. Reynolds*, No. 20135/86, slip op. at 15–16 (N.Y. Sup.Ct. June 14, 1990). The settlement resolved two lawsuits and, after tracing the chain of title of the rights to Star, denied the existence of any enforceable assignment after their receipt by Star. This was spelled out in the two district court opinions to which we just referred.

## II   Rule 11 Sanctions and Attorney's Fees and Costs

We turn now to consideration of whether the district court properly imposed Rule 11 sanctions and attorney's fees and costs under 17 U.S.C. § 505.

Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy. Although the imposition of sanctions is within the province of the district court, "any such decision [should be] made with restraint and discretion." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir.1999).

In this appeal, Pannonia seeks reversal of the award of Rule 11 sanctions against it and its attorney. Pannonia contends for the first time in its reply brief that the district court failed to afford it those procedural protections that must accompany Rule 11 sanctions. *See* Fed.R.Civ.P. 11(c)(1)(A). While the district court anticipated and addressed this issue to a certain extent, *see Pannonia I*, 2004 WL 1276842, at *10–*11, the record does not establish clearly whether those procedural protections were in fact satisfied in this case. For example, the record is unclear as to whether the district court granted Pannonia a 21–day safe harbor in which to withdraw its suit prior to receiving sanctions, or whether defendant's letter warning of its intent to move for sanctions (and on which Judge Buchwald relied in part in finding that due process had been satisfied) could adequately sustain a sanction on Bernard Dietz who had not yet been admitted *pro hac vice* as plaintiff's co-counsel.

However, we need not consider further this or any other argument regarding application of Rule 11 sanctions or defendant's request for attorney's fees and costs because the district court did not fix the amount of sanctions to be awarded. As such, the order is not final within the meaning of 28 U.S.C. § 1291 as to either the Rule 11 sanctions or the attorney's fees and costs. *See Krumme v. WestPoint Stevens, Inc.*, 143 F.3d 71, 86 (2d Cir.1998); *Cooper v. Salomon Bros. Inc.*, 1 F.3d 82,

84–85 (2d Cir.1993). Hence, the portion of the appeal related to defendant's requests for these awards should be dismissed for lack of appellate jurisdiction.

## CONCLUSION

For the reasons explained above, we affirm the district court's award of summary judgment, but dismiss, for want of jurisdiction, that portion of the appeal dealing with the award of Rule 11 sanctions and attorney's fees and costs. If the issue of the Rule 11 sanctions is the subject of a future appeal, we direct the parties and the Clerk of the Court to refer such appeal to this panel.