JOSÉ A. CABRANES, Circuit Judge:
In this appeal we consider a challenge to the imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure. Appellants are defense counsel in an action brought pursuant to the Alien Tort Statute (“ATS”), 28 U.S.C. § 1350, for alleged violations of customary international law in Nigeria. They seek review of an order of the United States District Court for the Southern District of New York (Kimba M. Wood, Chief Judge), affirming the order of a magistrate judge, that sanctioned them for making factual representations that allegedly lacked evidentiary support. Appellants challenge the order of the District Court on two grounds. First, they contend that a magistrate judge is not authorized to issue an order imposing Rule 11 sanctions, and the District Judge should have therefore construed the Magistrate Judge’s “Opinion and Order” as a report and recommendation under 28 U.S.C. § 636(b)(1)(B) subject to de novo review. Second, they argue that the imposition of Rule 11 sanctions based on the statements identified by plaintiffs cannot be sustained as a matter of law in light of the record evidence that supported those statements.
The panel is evenly divided on the first ground raised in this appeal, with one member of the panel concluding that magistrate judges have authority to impose Rule 11 sanctions, another judge concluding that they do not, and the third declining to endorse either view in light of the statute’s ambiguity. See post. Fortunately, we need not decide whether the District *80 Judge applied the correct standard of review to the Magistrate Judge’s determination that Rule 11 sanctions were warranted in this case, because we agree with appellants’ second basis for challenging the order of the District Court. As explained in greater detail below, the record evidence does not provide an adequate basis to impose Rule 11 sanctions on appellants. Therefore, we rely solely on the second ground advanced by appellants to resolve this appeal.
BACKGROUND
This appeal arises from a putative class action brought under the ATS. The complaint charged three affiliated corporate entities with violations of international law for their involvement in oil exploration and development in Nigeria. See Kiobel v. Royal Dutch Petroleum Co., 456 F.Supp.2d 457 (S.D.N.Y.2006). Plaintiffs moved for class certification pursuant to Rule 23(c) of the Federal Rules of Civil Procedure, and the District Court referred that motion to a magistrate judge for a report and recommendation under § 636(b)(1)(B). See Kiobel v. Royal Dutch Petroleum Co., No. 02 Civ. 7618, 2004 WL 5719589, 2004 U.S. Dist. LEXIS 28812 (S.D.N.Y. Mar. 31, 2004). On March 31, 2004, Magistrate Judge Henry B. Pitman recommended that the District Court deny plaintiffs’ motion for class certification. Id. at *14, 2004 U.S. Dist. LEXIS 28812, at *43.
Plaintiffs objected to the Magistrate Judge’s report and recommendation, and defendants filed an opposition to those objections. In that opposition, defense counsel stated, inter alia: (1) “Now we have learned that seven of the identified witnesses [in support of plaintiffs’ claims] are being paid for their testimony;” (2) “[T]here can be no doubt that the witnesses are giving testimony that [plaintiffs’] counsel knows to be false;”[1] and (3) “[W]e know that between February 29, 2004 and April 2, 2004, Berger & Montague [plaintiffs’ counsel] wired $15,195 to the Benin Republic for the benefit of the witnesses.” J.A. 344. On the basis of these statements, plaintiffs charged defense counsel — who are the appellants in this matter — with violating Rule 11(b)(3) of the Federal Rules of Civil Procedure, alleging that defense counsel’s statements had no evidentiary support. Pursuant to Rule 11, plaintiffs filed a motion for the imposition of sanctions against defense counsel. Opposing that motion, defense counsel argued that their statements were supported by record evidence.
In an Opinion and Order dated September 29, 2006, the Magistrate Judge denied plaintiffs’ motion with respect to the first statement,[2] having found some support for it in the record, see Kiobel v. Royal Dutch Petroleum Co., No. 02 Civ. 7618, 2006 WL 2850252, *4, 2006 U.S. Dist. LEXIS 71421, at *13 (S.D.N.Y. Sept. 29, 2006), but granted the motion with respect to the second[3] and third[4] statements, see id. at **9-10, 11-12, 2006 U.S. Dist. LEXIS 71421, at *29, *32-34. With respect to the second statement, the Magistrate Judge imposed *81 a $5,000 sanction on each attorney who signed the opposition filing, see id. at *12, 2006 U.S. Dist. LEXIS 71421, at *36, but he declined to impose monetary sanctions for making the third statement because “[although defendants’ counsel overstated the amount of money sent to benefit the [plaintiffs’] Witnesses, the amount of the overstatement was small (approximately $3,000) and did not materially change the nature of the statement,” id. at *11, 2006 U.S. Dist. LEXIS 71421, at *34. The Magistrate Judge also awarded plaintiffs one-third of their attorneys’ fees arising from their partially successful Rule 11 motion. See id. at **12-13, 2006 U.S. Dist. LEXIS 71421, at *37.
Counsel for defendants appealed the Magistrate Judge’s September 29, 2006 Order to the District Court. Applying a deferential “clearly erroneous or contrary to law” standard of review under 28 U.S.C. § 636(b)(1)(A), the District Court affirmed the imposition of sanctions in an unpublished order dated August 10, 2007. See Sp.App. 35, 37. This appeal followed.
DISCUSSION
We review an order imposing Rule 11 sanctions for abuse of discretion. See, e.g., Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 387 (2d Cir.2003). An “abuse of discretion” occurs when a district court “base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions.” Sims v. Blot, 534 F.3d 117, 132 (2d Cir.2008) (citations and internal quotation marks omitted). Here, the District Court’s decision to impose sanctions based on the statements challenged by plaintiffs has no support in law or logic — and therefore constitutes an “abuse of discretion.” A statement of fact can give rise to the imposition of sanctions only when the “particular allegation is utterly lacking in support.” Storey, 347 F.3d at 388 (internal quotation marks omitted). As described in greater detail below, neither of the statements that the Magistrate Judge and the District Judge held sanctionable meets this standard as a matter of law, and they therefore cannot give rise to the imposition of sanctions pursuant to Rule 11.
1. “[T]here can be no doubt that the witnesses are giving testimony that counsel knows to be false.”[5]
The Magistrate Judge held that there was no support whatsoever for defense counsel’s allegation that the Benin witnesses gave testimony that plaintiffs’ counsel knew to be false. See Kiobel, 2006 WL 2850252, at **9-10, 2006 U.S. Dist. LEXIS 71421, at *29. In defense of this statement, defense counsel argue that based on circumstantial evidence — including the size of the payments to the witnesses and the rush to depose them just before the end of discovery — it was reasonable to infer that plaintiffs’ counsel knew that testimony so elicited was likely to be false. More concretely, defense counsel point to moments during depositions when they directly told plaintiffs’ counsel that certain witnesses were testifying falsely. J.A. 529, 539. For instance, one witness, Ejiogu, testified that he had not returned to Nigeria since he fled in September 2003, but another witness, John-Miller, testified that Ejiogu subsequently returned to Nigeria to meet with plaintiffs’ counsel. Id. at 529-30, 621, 648.
*82 The Benin witnesses also denied knowing one another even though plaintiffs’ counsel was housing them together in a “compound” in Benin. Id. at 530. While there might have been reasons — perhaps even good ones — for these contradictions and inconsistencies, those contradictions were as apparent to plaintiffs’ counsel as they were to defense counsel. It was reasonable in the circumstances for defendants’ counsel to conclude not only that some of the testimony of the witnesses was false, but also that plaintiffs’ counsel were aware of the falsity.
Defense counsel also point to fourteen statements of the Benin witnesses that they contend were so obviously false that plaintiffs’ counsel must have known of their falsity. The strongest of these statements came from a witness who testified that “Shell had a $260 billion contract” in Nigeria, notwithstanding that the Shell Petroleum Development Company of Nigeria had annual pre-tax expenses of only $1 billion and Nigeria’s annual gross domestic product during the relevant time period was only $30 billion. Kiobel, 2006 WL 2850252, at **7-8, 2006 U.S. Dist. LEXIS 71421, at *22-23. The Magistrate Judge disagreed, explaining “[i]t may well be that the witness was referring to a multi-year or multi-decade contract; the witness may have been confusing units of currency; the witness may have been confusing billion and million or the witness may have just been wrong.”[6] Id. at *8, 2006 U.S. Dist. LEXIS 71421, at *23. The flaw in the Magistrate Judge’s analysis is that defense counsel need not prove the truth of their accusation, only that it was not “utterly lacking in support.” Storey, 347 F.3d at 388. As the Magistrate Judge acknowledged, see id., many reasonable inferences can be drawn from testimony that Shell held a contract in Nigeria that was worth nearly ten times that annual GDP of that country. He failed to recognize, however, that one of those reasonable inferences is that the witness gave false testimony that plaintiffs’ counsel knew to be false because it was so wildly off-base.
In light of this record evidence, it was legally erroneous for the Magistrate Judge to conclude that the statement “there can be no doubt that the witnesses are giving testimony that counsel knows to be false,” J.A. 344, was utterly lacking in support and therefore sanctionable.
2. “[W]e know that between February 29, 2004 and April 2, 2004, Berger & Montague wired $15,195 to the Benin Republic for the benefit of the witnesses.”
We also reject the Magistrate Judge’s determination that there was a lack of evidentiary support for defense counsel’s allegation that plaintiffs’ counsel “wired $15,195 to the Benin Republic for the benefit of the witnesses.” J.A. 344. The Magistrate Judge determined that this figure “overstated the amount sent by $3,000 or approximately twenty-five percent,” and therefore in violation of Rule 11. Kobel, 2006 WL 2850252, at *11, 2006 U.S. Dist. LEXIS 71421, at *32-33.[7] The *83 source of this supposed error, in the Magistrate Judge’s view, was the inclusion in the $15,195 figure of a $5,000 wire transfer from plaintiffs’ counsel to the Benin witnesses. That $5,000 transfer included, in the view of the Magistrate Judge, “$3,000 ... [that was] allocated to a pre-existing balance unrelated to the Benin [witnesses.” Id. at **10-11, 2006 U.S. Dist. LEXIS 71421, at *31. Accordingly, the Magistrate Judge concluded that defense counsel’s allegation that plaintiffs’ counsel wired $15,195 to the Benin witnesses lacked evidentiary support because defense counsel had evidence showing that only $12,195 had actually been sent.
The Magistrate Judge’s determination is flawed for at least two reasons. First, it is not clear that defense counsel’s statement is false. The record evidence does not show that the $3,000 in question covered services totally unrelated to the Benin witnesses. It shows that $3,000 was paid against a preexisting balance, see id. at *11, 2006 U.S. Dist. LEXIS 71421, at *32, but the source of that balance is not clear. It could very well be that the entire $5,000 payment was connected with services provided to the Benin witnesses. Nothing in the record contradicts that inference. Indeed, it is hard to condemn as unreasonable the inference that the $5,000 payment — although comprising both a prior balance and future expenses — was made for a single purpose: the maintenance of the Benin witnesses. Because this inference was not “utterly lacking in support,” Storey, 347 F.3d at 388, it cannot give rise to Rule 11 sanctions.
Second, even if the statement was literally false — ie., defense counsel should have excluded $3,000 from the $15,195 that it alleged was sent to the Benin witnesses — such an error does not violate Rule 11. “Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy.” Pannonia Farms, Inc. v. USA Cable, 426 F.3d 650, 652 (2d Cir.2005). As the Court of Appeals for the First Circuit has held, “Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement.” Navarro-Ayala v. Hemandez-Colon, 3 F.3d 464, 467 (1st Cir.1993) (Breyer, C.J.)\ see also Forrest Creek Associates, Ltd. v. McLean Sav. & Loan Ass’n, 831 F.2d 1238, 1245 (4th Cir.1987) (“[Rule 11 sanctions] do[ ] not extend to isolated factual errors, committed in good faith, so long as the pleading as a whole remains ‘well grounded in fact.’ ”). There is nothing in the record suggesting that defense counsel intentionally inflated the amount wired to the Benin witnesses by $3,000 or, as the Magistrate Judge concluded, that the overestimate had a material impact on the meaning of the statement, see Kiobel, 2006 WL 2850252, at **11-12, 2006 U.S. Dist. LEXIS 71421, at *34. Accordingly, the possible overstatement of the amount allegedly sent by plaintiffs’ counsel to the Benin witnesses (insofar as any exists) does not violate Rule 11. The decision of the Magistrate Judge to the contrary constituted an error of law.
CONCLUSION
Regardless of whether the District Judge should have reviewed the Magis *84 trate Judge’s decision under a de novo or more deferential standard of review, the imposition of sanctions in this case cannot stand as a matter of law because the statements at issue do not violate Rule 11. Accordingly, the August 10, 2007 order of the District Court, affirming the Magistrate Judge’s September 29, 2006 order imposing Rule 11 sanctions, is REVERSED.
JOSÉ A. CABRANES, Circuit Judge, concurring:
On this appeal, we are asked to consider whether magistrate judges, when acting pursuant to a district court’s reference under 28 U.S.C. § 636(b),[8] are authorized to issue orders sanctioning attorneys pursuant to Rule 11 of the Federal Rules of Civil Procedure or are authorized only to make recommendations to district judges on whether Rule 11 sanctions should be imposed. We do not answer that question in this case because, regardless of a magistrate judge’s authority, the Rule 11 sanctions at issue here cannot stand as a matter of law. Even though we are able to decide this case without resolving the threshold question presented, there remains a need for guidance on how a district court should review the determination of a magistrate judge that Rule 11 sanctions are warranted. Compare Rates Tech. Inc. v. Mediatrix Telecom, Inc., No. 05-CV-2755, 2007 WL 1987787, *2, 2007 U.S. Dist. LEXIS 48237, at *4 (E.D.N.Y. June 29, 2007) (applying de novo review), with Lawrence v. Wilder Richman Sec. Corp., 467 F.Supp.2d 228, 233 (D.Conn.2006) (applying clearly erroneous or contrary to law standard). Judge Leval has offered his views on the matter, Leval op. infra, and I offer my own in this separate opinion. In light of the fact that this issue is unsettled in our Circuit, there may be merit in Judge Leval’s advice to district judges, that in reviewing orders of magistrate judges imposing sanctions under Rule 11 they try to make the issue moot by declaring “regardless of whether the standard of review is deferential or de novo, [the district judge] would impose the same sanction[.]” Leval op. infra at 105. I am not certain that Judge Leval is right when he writes that “[i]t is only in the case where the district court would uphold the sanction if review is deferential but would withhold it if review is de novo that a higher court will need to decide the question.” Id. That said, Judge Leval and I have now provided some modest assistance to notes and comments editors of law reviews in search of an agenda, so we need not go mano a mano on the concept of “dicta within dicta.”
Pursuant to 28 U.S.C. § 636(b)(1)(A), magistrate judges are authorized to resolve “pretrial matter[s]” by order subject to review by district judges for clear error. Excluded from this grant of authority are dispositive motions, such as motions “for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information ..., to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim ..., and to involuntarily dismiss an action.” 28 U.S.C. § 636(b)(1)(A); see Williams v. Beemiller, Inc., 527 F.3d 259, 265 (2d Cir.2008) (concluding that the list of motions set forth in this subsection is “non-exhaustive”). Dispositive motions, *85 and certain other matters, may be submitted to a magistrate judge for a report and recommendation, which the district court then reviews de novo. See 28 U.S.C. § 636(b)(1)(B). The Supreme Court has construed this statutory grant of authority to mean that “ ‘nondispositive’ pretrial matter[s] [are] governed by § 636(b)(1)(A)” and “ ‘dispositive’ matter[s] [are] covered by § 636(b)(1)(B).” Gomez v. United States, 490 U.S. 858, 873-74, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989); see also Fed.R.Civ.P. 72(a) (“When a pretrial matter not dispositive of a party’s claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision.” (emphasis added)).
Although this Court has not determined whether an order granting Rule 11 sanctions is “dispositive” or “nondispositive” of a claim, other courts have. The Sixth and Seventh Circuits have held that decisions on Rule 11 motions are dispositive of a claim and are therefore not properly resolved by order of a magistrate judge. In Bennett v. General Caster Service of N. Gordon Co., the Sixth Circuit reasoned that “[n]othing in the [Federal Magistrates] Act expressly vests magistrate judges with jurisdiction to enter orders imposing Rule 11 sanctions” and “Rule 72(a) authorizes a magistrate judge to enter an order only as to a ‘pretrial matter ... ’ that is not dispositive of a ‘claim or defense of a party.’ ” 976 F.2d 995, 998 (6th Cir.1992). Observing that the “magistrate judge’s purported order entered pursuant to appellees’ Rule 11 motion resulted in an award of money damages,” the Sixth Circuit concluded that “[n]othing remained but to execute the judgment; therefore, this purported order was dispositive of the Rule 11 matter and, consequently, dispositive of a ‘claim.’ ” Id. As such, that court concluded, a Rule 11 motion cannot be resolved by an order of a magistrate judge; rather, “[a] magistrate judge should ... issue a report and recommendation for de novo review by the district court.” Id. In further support of this conclusion, the Sixth Circuit noted that “Congress specifically withheld from magistrate judges jurisdiction over contempt proceedings ... [which] are closely analogous to Rule 11 sanctions.” Id. at 998 n. 7.
Similarly, the Seventh Circuit held in Alpem v. Lieb that, upon the referral of a Rule 11 motion for sanctions, a “magistrate judge lacked authority to do anything other than make a recommendation.” 38 F.3d 933, 936 (7th Cir.1994) (Easterbrook, /.). Recognizing that “an award under Rule 11 is conceptually distinct from a decision on the merits,” that court found them similar insofar as an award under Rule 11 “requires one party to pay money to another” and “the denial of a request for sanctions has an effect similar to the denial of a request for damages.” Id. at 935. It also found support for its analogy in the fact that “[a]wards of sanctions ... are treated as separate claims for purposes of appellate jurisdiction.” Id. On that basis, the Seventh Circuit concluded that “[t]he power to award sanctions, like the power to award damages, belongs in the hands of the district judge.” Id.; see also Retired Chicago Police Ass’n v. City of Chicago, 76 F.3d 856, 869 (7th Cir.1996) (“The fact that an attorney was the subject of a sanctions request does not change the fact that resolution of a sanctions request is a dispositive matter capable of being referred to a magistrate judge only under § 636(b)(1)(B) or § 636(b)(3), where the district judge must review the magistrate judge’s report and recommendations de novo.”).
Plaintiffs rely on the Ninth Circuit’s decision in Maisonville v. F2 America, Inc. *86 to support their position that magistrate judges can issue orders imposing Rule 11 sanctions. 902 F.2d 746, 748 (9th Cir.1990). In Maisonville, a panel of the Ninth Circuit reasoned that Rule 11 sanctions were “nondispositive,” and therefore, magistrate judges did have the general authority to impose sanctions under Rule 11. I am not persuaded by this logic, however, because subsequent events have altered the relevant legal context in which the Ninth Circuit panel ruled. In Maisonville, the magistrate judge sanctioned the plaintiffs attorney under Rule 11 for filing a frivolous motion to reconsider the magistrate judge’s denial of Rule 37 sanctions against defendants for discovery abuses. As the Ninth Circuit in Maisonville noted, the “motion for reconsideration [at issue] was a discovery motion” and “[discovery motions fall within the ambit of Rule 11.” In 1993, after the ruling in Maisonville, Rule 11 was amended to exclude sanctions arising from discovery disputes. See Fed. R.Civ.P. 11(d) (“This rule does not apply to disclosures and discovery requests, responses, objections and motions under Rules 26 through 37.”).[9] In light of this change in the scope of Rule 11, I am skeptical that the Ninth Circuit’s ruling remains sound. As I describe in greater detail below, discovery disputes are within the core statutory authority of magistrate judges, and it is not surprising that Congress and the courts would grant magistrate judges broader power over the regulation of discovery. Accordingly, I believe that the significance of Maisonville has been diminished by subsequent changes in the relevant law, and that decision, a product of the legal context in which it was written, does not provide a sound counterargument to the position of the Sixth and Seventh Circuits.
I am persuaded by the reasoning of the Sixth and Seventh Circuits holding that a magistrate judge is not authorized to issue an order imposing Rule 11 sanctions.[10] I reach this conclusion because a Rule 11 motion for sanctions, though it arises in the context of an underlying action, is the functional equivalent of an independent claim. Cf. Williams, 527 F.3d at 265 (citing Vogel v. United States Office Prods. Co., 258 F.3d 509, 514-17 (6th Cir.2001)). On this point, the Supreme Court has compared a motion for Rule 11 sanctions to a criminal contempt charge insofar as each is “a separate and independent proceeding at law that is not part of the original action.” Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (internal quotation marks omitted). Relying in part on this authority, our Court has previously recognized that “the imposition of sanctions is an issue collateral to and independent from the underlying case” and for that reason, “even when a district court lacks subject matter jurisdiction over an underlying action, it still possesses jurisdiction to impose sanctions arising from the underlying case.” Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 333 (2d Cir.1999).
*87 That a motion for Rule 11 sanctions gives rise to proceedings that are separate and distinct from the underlying action is apparent from the fact that, in the majority of cases, Rule 11 proceedings do not involve the same parties as the underlying action. It has been previously recognized that Rule 11 is primarily concerned with the conduct of lawyers. See, e.g., Cooter & Gell, 496 U.S. at 396, 110 S.Ct. 2447 (“[A] Rule 11 sanction ... requires the determination of ... whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate.”); Pannonia Farms, Inc. v. USA Cable, 426 F.3d 650, 652 (2d Cir.2005) (“Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy.”). See generally Fed.R.Civ.P. 11 advisory committee’s note (“The rule retains the principle that attorneys and pro se litigants have an obligation to the court to refrain from conduct that frustrates the aims of Rule 1.”). Accordingly, Rule 11 sanctions are generally imposed on attorneys, not litigants. See generally Fed R. Civ. P. 11 advisory committee’s notes (“The person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and in most sanctions should be sanctioned for a violation.”). As a result, a motion for the imposition of Rule 11 sanctions on an attorney is not a matter contested by the parties to the underlying action, but, as here, a claim pressed by a party against counsel for an opposing party. The fact that the “parties” to a Rule 11 motion are distinct from those in the underlying action underscores the separateness of the Rule 11 claim from those pressed in the underlying action. Indeed, we have recognized this distinction in our treatment of Rule 11 orders on appeal. Under our precedents, the imposition of Rule 11 sanctions on an attorney is immediately appeal-able pursuant to the collateral order doctrine. See MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 73 F.3d 1253, 1258 n. 4 (2d Cir.1996); Morley v. Ciba-Geigy Corp., 66 F.3d 21, 22 n. 1 (2d Cir.1995); see also Agee v. Paramount Commc’n, Inc., 114 F.3d 395, 399 (2d Cir.1997) (holding that attorneys appealing fee awards against them must appeal in their own names).
I also agree with the Sixth and Seventh Circuits that the resolution of a motion for Rule 11 sanctions is analogous — although surely not identical — to an action for damages insofar as the desired remedy is a monetary award to the movant. As noted above, the grounds for a Rule 11 motion are independent of the merits of the underlying litigation, arising instead from the duty of candor to the court. Accordingly, a Rule 11 motion can be considered the functional equivalent of an action pressing a “claim” for the breach of the duty set forth in the rule. When a court determines that this duty has been breached and that a monetary award is warranted, the claim has been disposed of in full. Nothing remains but the entry of judgment, or its functional equivalent.
Although I recognize that these analogies — like all analogies — are imperfect, they are, I submit, persuasive. First, as noted above, contempt proceedings are also independent and collateral proceedings for the purposes of appellate jurisdiction. See, e.g., Cooter & Gell, 496 U.S. at 396, 110 S.Ct. 2447. Nevertheless, magistrate judges may summarily punish acts of criminal contempt that occur in the magistrate judge’s presence.[11] 28 U.S.C. *88 § 636(e)(2). In such limited circumstance, then, a magistrate judge may take actions that are “dispositive” of an independent claim. This, however, is a narrow statutory exception to the general principle that magistrate judges may not dispose of claims when acting by referral, and there is no basis to expand this exception, solely by judicial action, to include Rule 11 sanctions. Second, the observation that Rule 11 sanctions are effectively independent claims because they usually require that one party pay damages to another party fails to account for some exceptions to that general rule, but remains helpful nevertheless. As Judge Leval notes, the order imposing Rule 11 sanctions may direct the offender to publish the fact that sanctions have been imposed, attend educational classes, or seek leave of the court before filing further actions. Leval op. infra at 103. Nevertheless, damages are a common remedy for violations of Rule 11, and that fact is surely relevant to a consideration of whether Rule 11 sanctions are an independent claim.
A determination that the disposition of a Rule 11 motion must be made by a district judge is not a disparagement of the authority of magistrate judges to preside over matters properly before them. Indeed, coercive authority is entrusted to magistrate judges for matters within their statutory authority. That is why magistrate judges have the power to impose sanctions for violations of discovery orders. In Thomas E. Hoar, Inc. v. Sara Lee Corp., for example, we held that “[m]onetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate [judge], reviewable by the district court under the ‘clearly erroneous or contrary to law’ standard.” 900 F.2d 522, 525 (2d Cir.1990). I recognize that some of the reasons which persuade me that magistrate judges lack statutory authority to impose sanctions under Rule 11 might apply also to the imposition of sanctions under Rule 37. In the context of Rule 37, however, these reasons are not persuasive because of a magistrate judge’s statutory, institutional, and historical authority over discovery proceedings. Indeed, it is the broad scope of a magistrate judge’s authority over discovery disputes that provides the source of his authority to impose sanctions for the violation of discovery orders. Conducting pretrial and discovery proceedings has been a core component of a magistrate judge’s role in civil cases since Congress created the position of magistrate judge. See Federal Magistrate Act of 1968, Pub.L. No. 90-578, 82 Stat. 1107 (codified as amended at 28 U.S.C. § 631 et seq.). When presiding over matters unrelated to discovery, however, a magistrate judge’s authority is often more circumscribed. In this case, for example, plaintiffs’ motion for class certification was referred to the magistrate judge for a report and recommendation; the disposition of that motion was unquestionably beyond the authority of a magistrate judge under 28 U.S.C. § 636(b)(1)(A). This limited authority over motions for class certification is not comparable to the broad authority of a magistrate judge over discovery matters. Accordingly, I see nothing anomalous in the recognition of a magistrate judge’s sanctioning authority in the context of discovery, pursuant to Rules 26 and 37, but not with respect to motions brought under Rule 11 where the authority of magistrate judges is far more narrow.
Judge Leval believes that magistrate judges’ limited powers to issue criminal *89 contempt citations undermines my argument. Leval op. infra at 105. Congress conferred additional powers on magistrate judges after Bennett and Alpem, thus, in his view, undermining the significance of those opinions. I believe that the reasoning in these cases remains sound, even if one construes citations for criminal contempt as being “dispositive” of a claim. In 2000, Congress conferred limited contempt powers on magistrate judges under 28 U.S.C. § 636(e). See Federal Courts Improvement Act of 2000, Pub.L. No. 106-518, 114 Stat. 2410. Under this section, magistrate judges have limited power to punish acts of contempt occurring in then-presence, § 636(e)(2), but must refer the matter to the district judge if the act does not occur in the magistrate’s presence, § 636(e)(6)(B)(ii).[12] Because the Supreme Court in 1990 in Cooter & Gell reasoned that criminal contempt charges and Rule 11 sanctions were similar, Judge Leval argues that we should read the 2000 statutory grant of limited criminal contempt authority as including authority to impose Rule 11 sanctions. We cannot bootstrap, I submit, the minimal grant of authority to magistrate judges to punish misconduct that occurs before their eyes into a plenary power to hold litigants and attorneys in contempt or impose Rule 11 sanctions. To do so would undermine Congress’s decision to grant magistrate judges certain powers and withhold others. Furthermore, it would contravene general principles of statutory interpretation. If we apply the- historic presumption in favor of continuing judge-made law absent clear congressional intent otherwise, see Midlantic Nat’l Bank v. New Jersey Dep’t of Environmental Protection, 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (“The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.”), then we can and should interpret Congress’s decision in 2000 to grant only limited contempt powers as an implicit ratification of the earlier Sixth and Seventh Circuits’ holdings that magistrate judges do not have the authority to impose Rule 11 sanctions.[13] Knowing of the decisions in Bennett and Alpem, Congress readily could have included the power to impose Rule 11 sanctions in 2000 when it amended § 636 to provide for limited contempt powers. Because Congress chose to confer only limited contempt powers on magistrate judges, we should assume, pursuant to the general principles of statutory construction, that Congress intended to withhold the additional authority to impose Rule 11 sanctions.
Judge Leval correctly observes that magistrate judges have considerable coercive authority when they impose contempt citations, Leval op. infra at 94-95, but this fact does not answer the question presented, especially when one considers the restrictions on this power. Section 636(e)(6)(B) explicitly provides that, if the contumacious conduct does not occur in *90 the magistrate judge’s presence, the issue must be referred to the district judge.
Finally, I find unpersuasive Judge Le-val’s argument that the similarities between Rule 11 sanctions and criminal contempt citations would make subjecting them to differing levels of scrutiny illogical. Leval op. infra at 102. If it is true that Rule 11 sanctions bear similarities to criminal contempt citations, it is likewise true that they are similar to other actions that are subject to de novo review by the district judge. Examination of pleadings in response to a Rule 11 motion is, for example, functionally analogous to reviewing pleadings for conformity with Rules 8 and 10 (and Rule 9, where applicable) of the Federal Rules of Civil Procedure and analogous also to the evaluation of motions under Rule 12 of the Federal Rules of Civil Procedure. Each of these rules requires magistrate judges to assess the sufficiency and validity of the pleadings. Under Rules 8, 9, 10, and 12, the magistrate judge may only issue an advisory report subject to de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(A); see Beemiller, Inc., 527 F.3d at 265. Because Rule 11 also requires that a magistrate judge assess the pleadings, one could reason that a district judge is better suited to determine the necessity or propriety of the sanctions. Accordingly, it is possible to construe Rule 11 sanctions as “similar” to both dispositive and non-dispositive matters. And therein lies the flaw in Judge Leval’s argument that, because the imposition of Rule 11 sanctions can be deemed “similar” to another function, they must be subject to the same level of review as that other function. Instead, we must assess the level of review for Rule 11 sanctions on the basis of that Rule’s own terms and on the basis of the known statutory prescriptions of Congress.
For these reasons, I would conclude that the resolution of a motion for Rule 11 sanctions is a “dispositive” determination that can be referred to a magistrate judge under § 636(b) for a report and recommendation only, which is then reviewed de novo by the district judge.

. The next sentence of the opposition read: "There will be further discovery into the question of who caused these witnesses to give obviously false testimony." J.A. 344.

. "Now we have learned that seven of the identified witnesses are being paid for their testimony.” J.A. 344.

. "[T]here can be no doubt that the witnesses are giving testimony that counsel knows to be false." J.A. 344.

. “[W]e know that between February 29, 2004 and April 2, 2004, Berger & Montague wired $15,195 to the Benin Republic for the benefit of the witnesses.” J.A. 344.

. The Magistrate Judge and plaintiffs’ counsel read this statement as an accusation that plaintiffs' counsel was instructing witnesses to testify falsely. Such an interpretation is not compelled by the plain meaning of the text.

. The distinction between "wrong” and "false” is not examined in the Magistrate Judge’s opinion. Nevertheless, it would be remarkable if, under Rule 11, calling an untrue statement "wrong” is permissible, but calling it "false” is sanctionable. Reference to a dictionary shows that the first definition of "false” — "not corresponding to the truth or reality; not true,” Webster’s Third New International Dictionary 819 (17th ed.1976) — is virtually identical to one of the definitions of "wrong” — "not agreeing with or conforming to the facts; erroneous; incorrect,” id. at „ 2641. If the magistrate judge was correct that the testimony may have been "wrong,” then it may also have been "false.”

. The Magistrate Judge determined that monetary sanctions for this perceived violation of *83 Rule 11 were not warranted, however, because "the amount of the overstatement was small (approximately $3,000) and did not materially change the nature of the statement.” Kiobel, 2006 WL 2850252, at **11-12, 2006 U.S. Dist. LEXIS 71421, at *34. Even though this perceived violation of Rule 11 did not result in monetary sanctions, we nevertheless review the ruling because of the injurious effect that a judicial determination of a Rule 11 violation has on an attorney's professional reputation.

. I do not address here the authority of a magistrate judge to award sanctions when acting pursuant to the consent of the parties under 28 U.S.C. § 636(c). Because magistrate judges have substantially greater authority when acting with the consent of the parties, see, e.g., 28 U.S.C. § 636(e)(3)-(4), I consider only provisions related to a magistrate judge’s powers when acting on referral from a district court.

. Sanctions for discovery abuses are now imposed pursuant to Rule 37 of the Federal Rules of Civil Procedure.

. Judge Leval argues that my "focus on the ... decisions in Bennett and Alpem ... is arbitrary ... [because] seven circuits, including ours, considered whether magistrate judges were empowered under the pre-2000 statute to award sanctions.” Leval op. infra at 99. The cases to which Judge Leval refers, however, involve sanctions for discovery abuses under Rule 11 before it was amended in 1993 or they involve sanctions under Rule 37. Here, we consider whether magistrate judges have the authority to impose sanctions under the current Rule 11, and I need not comment on the authority of magistrate judges to impose sanctions under Rule 37.

. Although Congress has conferred on magistrate judges broader authority to punish acts of contempt when presiding with the consent of the parties, 28 U.S.C. § 636(e)(3)-(4), this *88 does not affect our discussion, which is limited to the authority of magistrate judges when acting by referral of a district judge, rather than upon consent of the parties.

. I emphasize again that Congress granted narrow contempt powers when the magistrate is acting by referral and broader contempt powers when the magistrate is acting with the consent of the parties. Because we here consider only whether magistrate judges have authority to impose Rule 11 sanctions when acting by referral, any powers Congress granted to magistrate judges when acting with the consent of the parties is, in my view, entirely irrelevant to the current inquiry-

. This assumes, I believe reasonably, that the logic of Maisonville, which was decided in 1990, did not survive the 1993 amendments to Rule 11, and thus that there was no split among the circuits as to whether magistrate judges could impose sanctions under the Rule 11 for actions not related to discovery.